STATE of Iowa, Appellee,

v.

Vincent **TOKATLIAN**, Appellant.

STATE of Iowa, Appellee,

v.

Carmichael C. **PETERS**, Appellant.

Nos. 54387, 54591.

Supreme Court of Iowa.

Dec. 20, 1972.

Ralph D. Beal, Davenport, for appellant Tokatlian and appellant Peters.

Richard C. Turner, Atty. Gen., C. Joseph Coleman, Jr., Asst. County Atty., Edward N. Wehr, County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REES and HARRIS, JJ.

MASON, Justice.

These consolidated appeals arise from two judgments sentencing defendants to two years in the state penitentiary following separate convictions of selling narcotic drugs in violation of section 204.2, The Code, 1966.

Vincent Tokatlian was accused of having sold a quantity of marijuana to Richard Castro, a deputy sheriff of Scott County. At approximately 8:30 p. m. April 4, 1970, Castro, Roxanne Mueller and Tim Wessling drove to Tokatlian's college dormitory room and purchased from Tokatlian what he represented to be a quantity of marijuana for five dollars.

It appears that earlier the same evening Castro had notified his superior, Kenneth Paulsen, by telephone he would be working as an undercover agent that night in the area of Vander Veer Park, a city park frequented by young people suspected of using drugs. Subsequently, Castro received a phone call from Miss Mueller, who informed him she had located an individual from whom they could procure marijuana. Castro then proceeded to Vander Veer Park where he spoke with several people, including Miss Mueller. It is not clear from the record whether Castro left the park with Miss Mueller or whether they met at her home. Upon leaving the park, however, Castro drove to Miss Mueller's home. From that point the two went to the residence of Timothy Wessling and the three then continued on to Tokatlian's residence where Castro gave Tokatlian $5.00 in return for a substance wrapped in tinfoil which he believed to be hashish. Castro and Miss Mueller than left the campus. Castro returned Miss Mueller to her home and went directly to the sheriff's office.

Paulsen, who had followed and observed Castro and Miss Mueller after Castro left Vander Veer Park, returned to the sheriff's office when it was apparent Castro was taking the girl home.

At the office, Castro immediately handed the substance purchased from Tokatlian over to Paulsen. A narcodol test performed by Paulsen indicated the substance was either hashish or some other concentrated form of marijuana. Thereafter, the substance was sealed in an appropriately marked envelope and locked in the sheriff's evidence file.

April 8 Paulsen mailed the package obtained from Tokatlian to the Federal Bureau of Narcotics and Dangerous Drugs Laboratory in Chicago, Illinois, for analysis purposes. David Parmalee, a forensic chemist with the Bureau testified he analyzed the substance received from Paulsen and found it to be hashish. After the substance was sent back to officer Paulsen, it remained in the sheriff's evidence file until the first day of Tokatlian's trial.

At close of the State's evidence consisting of testimony of Castro, Paulsen and Parmalee, defendant moved for a directed verdict asserting, in effect, there was insufficient evidence of a continuous chain of possession from the time Castro received the substance from Tokatlian until the substance was returned to Paulsen by the chemist, Parmalee. The motion was correctly overruled. The problem arising from a challenge of sufficiency of a chain of possession of evidence necessary for admissibility is fully discussed in State v. Grady, 201 N.W.2d 493, 495–496 (Iowa 1972); State v. Ubben, 186 N.W.2d 625, 627–628 (Iowa 1971); and State v. Limerick, 169 N.W.2d 538, 541–542 (Iowa 1969).

Defendant then introduced his evidence but failed to renew his motion for a directed verdict at close of all evidence. The jury found Tokatlian guilty of the crime of unlawfully selling a narcotic drug as charged in the county attorney's information.

Carmichael C. Peters' conviction ensued from a wholly unrelated incident in which Castro and Miss Mueller were also in-

volved. Castro testified he had engaged in activity as an undercover agent for the Scott County sheriff's department on March 24, 1970. On that evening he and Miss Mueller went to Peters' apartment arriving about 8:45 p. m. Both were admitted by Peters to his apartment. He then paid Peters a five dollar bill for a quantity of marijuana contained in a cellophane bag. Upon receiving the marijuana, they left the apartment. After driving Miss Mueller back to her home, he went directly to the sheriff's office and delivered to Paulsen the substance purchased from Peters.

Paulsen testified he observed Castro and Miss Mueller enter the apartment building about 8:45 p. m. March 24, although he was unable to actually see either of them enter Peters' apartment; that he had Castro under his surveillance from the time of their arrival at Peters' apartment until it appeared Castro was returning Miss Mueller to her home before going to the sheriff's office. Further, since a narcodol test performed by him revealed the substance obtained from Peters was marijuana, he mailed the substance to the Chicago office of the Federal Bureau of Narcotics and Dangerous Drugs.

Parmalee testified he had analyzed the particular substance involved in this litigation and had found it to be marijuana.

Peters' testimony was substantially dissimilar from that of Castro's. According to Peters' version he had met Castro and Miss Mueller only twice before the night of March 24, first during the week prior to March 24 and again on the night of March 23. On both occasions Castro had attempted to purchase marijuana from him. March 24 only Castro entered his apartment. Castro implored Peters to sell him $3.00 worth of marijuana on the pretense Miss Mueller was a "speed freak," who would resort to hard drugs if she could not obtain marijuana. Peters then searched the apartment and discovered a bag of marijuana which belonged to his roommate. Because he had no knowledge of the mone-

tary value of marijuana, Peters offered to let Castro have the entire amount without compensation. Castro refused the offer, removed a quantity he considered to be $3.00 worth, and gave Peters another $2.00 "for his trouble."

Clyde Harris, Peters' roommate, testified that when he returned to the apartment after working from 11:00 p. m. to 7:00 a. m. on the morning of March 25, he discovered a bag of marijuana on a table together with five $1.00 bills. He then accused Peters of having violated their agreement never to sell marijuana. Peters denied having sold the marijuana but said he had given some to Castro for the benefit of Miss Mueller.

In rebuttal, the State offered further testimony of Castro and Miss Mueller. Castro denied having ever met Peters prior to the night of March 24, 1970. Miss Mueller stated she accompanied Castro into Peters' apartment that evening where she observed Castro purchase marijuana from Peters; also, she was not then aware Castro was a police officer.

After the jury returned a verdict of guilty, Peters filed a motion for new trial. The motion was overruled and Peters was sentenced.

The same counsel represented both defendants in the trial court and has filed both appeals. The errors relied upon for reversal in each case, as well as the arguments, are identical. The errors assigned by each defendant and argued in separate divisions are: (1) the trial court erred in failing to sustain defendant's motion to set aside the verdict and for a new trial on the ground the verdict is contrary to the evidence; (2) defendant's constitutional rights were violated by the Iowa statutory scheme relating to marijuana and requires this court to conduct an independent examination of facts underlying that statutory structure; (3) classification of marijuana with "Narcotic Drugs" with attendant mandatory nonparolable disposition for first offense, however small the quantity,

violates defendant's rights under the due process and equal protection clauses of the federal and state constitutions; and (4) the applicable sentencing provisions of the statute constitute cruel and unusual punishment in violation of Amendment 8 of the United States Constitution and section 17, Article I of the state constitution.

I. In the first division of each brief error is predicated on the court's refusal to sustain both a motion to set aside the verdict and a motion for new trial on the ground the verdict is contrary to the evidence. However, since the same steps to preserve the alleged error were not followed in the trial of these cases, consideration of the assignment presents different problems.

In the Tokatlian case, defense counsel asks this court to review a motion that was never made. The abstract of record contains no motion to set aside the verdict or motion for new trial. Rather, in the course of trial, counsel only moved for a directed verdict at the close of the State's evidence. As stated, Tokatlian failed to renew the motion at the close of all evidence.

A trial court may sustain a defendant's motion for directed verdict at the close of the state's case but is not required to do so, and no error can be predicated upon the court's failure to sustain that motion. Unless defendant's motion for directed verdict is renewed at the close of all evidence, it is deemed waived. State v. McElhaney, 261 Iowa 199, 202, 153 N.W. 2d 715, 717; State v. Jennings, 195 N.W.2d 351, 357 (Iowa 1972).

This assignment presents nothing for review in the Tokatlian case.

On the other hand, in the Peters case defendant did file motion for new trial based on four asserted grounds. On appeal, in attacking the court's ruling under this assignment, he relies only on the ground that the verdict was contrary to the evidence.

The phrase, "contrary to the evidence," in statutes authorizing new trial on ground that verdict is contrary to the evidence such as section 787.3(6), The Code, has been interpreted as synonymous with the phrase, "against the weight of the evidence," which is used interchangeably with the phrase "insufficiency of the evidence."

Saying " 'that the verdict is contrary to the evidence' " is just another way of saying that the evidence was insufficient to justify the verdict. See State v. Brent, 30 Wash.2d 286, 191 P.2d 682, 684.

On defendant's appeal from criminal conviction based on jury verdict challenging sufficiency of evidence to sustain the verdict this court views the evidence in the light most favorable to the State and accepts as established all reasonable inferences tending to support action of the jury. It is necessary to consider only the supporting evidence whether contradicted or not. State v. Brown, 172 N.W.2d 152, 153 (Iowa 1969).

In a criminal case where the verdict is clearly against the weight of the evidence motion for new trial should be granted under section 787.3(6), The Code. State v. Carlson, 224 Iowa 1262, 1265, 276 N.W. 770, 772. But, where the evidence when viewed in the light stated in State v. Brown, supra, and in those cases following that decision, is found to be substantial and reasonably tending to support the charge, a conviction should not be disturbed.

In the Peters case there was sufficient evidence to create a jury question, and the verdict of conviction has substantial support in the evidence.

The court did not err in overruling Peters' motion for new trial.

II. Both defendants were convicted and sentenced under the now repealed Iowa Code chapter 204 entitled the Uniform Narcotic Drug Act, enacted in 1965. (The Uniform Narcotic Drug Act was repealed by

the Sixty-fourth General Assembly, chapter 148, section 605, effective July 1, 1971, the Uniform Controlled Substances Act). They now endeavor to impugn the constitutionality of that statute on the basis that it erroneously classifies marijuana as a "narcotic drug."

■ Neither the second nor third assigned errors were raised in any manner by the defendants in the proceedings below and are presented for the first time on this appeal. They may not be raised at this late stage of the proceedings.

Ordinarily, matters not raised in the trial court, including constitutional questions, cannot be effectively asserted the first time on appeal. State v. Evans, 193 N.W.2d 515, 519 (Iowa 1972); State v. Beer, 193 N.W.2d 530, 532 (Iowa 1972); State v. McClelland, 164 N.W.2d 189, 197 (Iowa 1969); State v. Halverson, 261 Iowa 530, 536, 155 N.W.2d 177, 180; State v. Hardesty, 261 Iowa 382, 389, 153 N.W.2d 464, 469; State v. Jones, 253 Iowa 829, 834, 113 N.W.2d 303, 306–307. See also State v. Armstrong, —— N.W.2d —— (Iowa 1972).

Even more appurtenant, the constitutionality of a statute may not be considered on appeal where the question was not raised in the lower court. Peel v. Burk, 197 N.W. 2d 617, 619 (Iowa 1972); State for City of Dubuque v. Conrad, 191 N.W.2d 648, 649 (Iowa 1971); State v. Smith, 247 Iowa 500, 503, 73 N.W.2d 189, 190; State v. Delevie, 219 Iowa 1317, 1320, 260 N.W. 737, 738; State v. Burch, 195 Iowa 427, 433, 192 N.W. 287, 289.

The provisions of former chapter 204 were known at the time of trial, and the circumstances do not require a departure from the general rule stated above. State v. Wisniewski, 171 N.W.2d 882 (Iowa 1969). As noted in State v. LaMar, 260 Iowa 957, 970, 151 N.W.2d 496, 503, " * * * We have adequate procedure, if followed, to properly determine the constitutional question involved and there is a legitimate interest and a sound public purpose to be

served by a procedural rule which requires that the trial court * * * be apprised of the question of law involved."

Defendants' second and third assignments present nothing for review in this court.

III. In their remaining assignment defendants contend the applicable sentencing provisions of the statute constitute cruel and unusual punishment and are unconstitutional.

Former section 204.1(10), The Code, 1966, which defines marijuana as a narcotic drug, is qualitative rather than quantitative. State v. Grady, 201 N.W.2d at 496 (Iowa 1972). The penalties prescribed in former section 204.20, The Code, apply to any violation of former section 204.2, irrespect of the quantity.

We set out the portions of section 204.20 material here:

"1. Any person violating any provision of this chapter, except as otherwise provided shall upon conviction be fined not more than two thousand dollars and shall be imprisoned in the state penitentiary not less than two or more than five years.

" * * *

"4. For violation of the provisions of this chapter concerning the manufacturing, selling, administering to another person, or dispensing a narcotic drug, the imposition or execution of sentence shall not be suspended and probation or parole shall not be granted until the minimum imprisonment herein provided for the offense shall have been served."

Ordinarily, the minimum extent or duration of incarceration authorized by statute is not a manifestation of cruel and unusual punishment. Rather, these terms are usually used in reference to the nature of the punishment to be imposed. State v. McNeal, 167 N.W.2d 674, 678 (Iowa 1969).

■ Although the legislature recently provided a lesser penalty for the same offense, the minimum statutory sentences re-

ceived by defendants pursuant to former section 204.20, The Code, are not necessarily unreasonable and do not constitute cruel and unusual punishment.

Section 204.20 is not constitutionally defective in the respects urged by defendants. Defendants' arguments are without merit.

The cases are each

Affirmed.