STATE of Iowa, Appellee,

v.

Ronald Alexander ROBINSON, Appellant.

No. 62842.

Supreme Court of Iowa.

Feb. 20, 1980.

Gordon E. Allen, of Allen, Babich & Bennett, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Lona Hansen, Asst. Atty. Gen., and Dan Johnston, Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, ALLBEE and McGIVERIN, JJ.

UHLENHOPP, Justice.

This appeal involves challenges to our rule on the quantum of evidence required for conviction in criminal cases and to the sufficiency of the evidence in the instant case.

The case arose out of an attempted robbery at Robert's Lounge in Des Moines, Iowa, at an early morning hour on July 19, 1978. Two armed, masked men entered the lounge, one from the front entrance and the other from the rear. A crowd of thirty to forty persons was present. The man who entered through the back door ordered everyone in the establishment to get down. An employee of the lounge then fired shots, and the two men fled.

On August 22, 1978, the county attorney filed a trial information against defendant Ronald Alexander Robinson, charging him with first-degree armed robbery in violation of sections 711.1 and 711.2 of the 1977 Supplement to the Code. Officers arrested Robinson in Des Moines on July 27, 1978, when they stopped him for a traffic violation. Robinson pled not guilty, and stood trial on October 25 and 26, 1978. At the close of the State's case in chief and again at the close of the evidence, Robinson moved for a directed verdict on the ground that as a matter of law the record contained insufficient evidence to establish his participation in the offense. The trial court overruled the motions. The jury returned a guilty verdict on October 27, 1978, and Robinson appealed after sentence.

I. *Required quantum of evidence.* At one time this court examined the record to see if it contained "competent" evidence of guilt. *See State v. Pray,* 126 Iowa 249, 253, 99 N.W. 1065, 1066 (1904). *See also,* 23 C.J.S. *Criminal Law* § 910, at 593–94 (1961); 23A C.J.S. *Criminal Law* § 1139, at 349 (1961) (consideration of prior scintilla of evidence rule). Later this court examined for "substantial" evidentiary support. *See State v. Gibson,* 189 Iowa 1212, 1233, 174 N.W. 34, 42 (1919).

The evidentiary measure this court now applies we recently explained in this way: "In reviewing these rulings we view the evidence in the light most favorable to the State, without regard to contradiction or inconsistencies and assisted by all reasonable inferences. *If there is substantial support for the verdict in the record, the jury verdict is conclusive."* *State v. Jones,* 271 N.W.2d 761, 763 (Iowa 1978) (emphasis added, citation omitted). We have also said that "where the verdict is clearly against the weight of the evidence" a new trial should be granted. *State v. Tokatlian,* 203 N.W.2d 116, 119 (Iowa 1972). *See* present Iowa R.Crim.P. 23(2)(b)(6) (new trial when "verdict is contrary to law or evidence"). We have said that evidence is "substantial" when a reasonable mind would accept it as adequate to reach a conclusion. *General Telephone Co. of Midwest v. Iowa State Commerce Commission,* 275 N.W.2d 364, 370 (Iowa 1979); *City of Davenport v. Public Employment Relations Board,* 264 N.W.2d 307, 311 (Iowa 1978).

Robinson argues that the quoted language is inconsistent with a recent pronouncement of the United States Supreme Court. In *Jackson v. Virginia,* the Court faced the issue of the standard to apply in federal habeas corpus proceedings when the defendant claims he was convicted in a state court on insufficient evidence. 443 U.S. 307, 309, 99 S.Ct. 2781, 2784, 61 L.Ed.2d 560, 567, *rehearing denied,* (U.S.) 100 S.Ct. 195, 62 L.Ed.2d 126 (1979). The Court of Appeals in *Jackson* had relied on the "no evidence" test enunciated in *Thompson v. Louisville,* 362 U.S. 199, 199, 80 S.Ct. 624, 625, 4 L.Ed.2d 654, 655 (1960) ("The ultimate question presented to us is whether the charges against petitioner were so totally devoid of evidentiary support as to render his conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment."). In *Jackson* the Supreme Court abandoned the *Thompson* no-evidence rule in this language:

> [A] properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction. Under [*In re*] *Winship,* [397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970),] which established proof beyond a reasonable doubt as an essential of Fourteenth Amendment due process, it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand.

> .    .    .    .

> After *Winship* the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 317–319, 99 S.Ct. at 2788–89, 61 L.Ed.2d at 572–73.

■ We do not agree with Robinson that the measure of proof announced in *Jackson* is inconsistent with our substantial evidence rule. Substantial evidence, under the definition we have already stated, means such evidence as could convince a rational trier of fact that defendant is guilty beyond a reasonable doubt. Examination of past criminal cases in which sufficiency of the evidence was an issue demonstrate that such is the manner in which this court has applied the substantial evidence rule. *See, e. g., State v. White,* 223 N.W.2d 163, 165 (Iowa 1974) ("We hold that there was substantial evidence reasonably supporting the charge against defendant."); *Tokatlian,* 203 N.W.2d at 119 ("[W]here the evidence when viewed in the light [most favorable to the prosecution] is found to be substantial and reasonably tending to support the charge, a conviction should not be disturbed."); *State v. Cartee,* 202 N.W.2d 93, 97 (Iowa 1972) ("[The evidence] clearly discloses adequate substantive evidence from which the jury could reasonably conclude Cartee at the time here concerned, inflicted death-causing injuries to his wife."); *State v. Gilroy,* 199 N.W.2d 63, 67 (Iowa 1972) ("[T]he record discloses adequate substantive evidence from which the jury could reasonably conclude money was taken during the fatal Fareway Store incident. From this also flows the unavoidable conclusion, there was sufficient evidence to support the jury verdict    .    .    ..").

We find considerable support in the decisions of other courts for defining substantial evidence as such evidence as could convince a rational trier of fact that the defendant is guilty beyond a reasonable doubt. *See United States v. Green,* 548 F.2d 1261, 1266 (6th Cir. 1977); *United States v. Harper,* 450 F.2d 1032, 1040 (5th Cir. 1971); *United States v. Delay,* 440 F.2d

566, 568 (7th Cir. 1971); *Woodard Laboratories v. United States,* 198 F.2d 995, 998 (9th Cir. 1952); *Dolchok v. State,* 519 P.2d 457, 460 (Alaska 1974); *State v. Bearden,* 99 Ariz. 1, 4, 405 P.2d 885, 886 (1965); *People v. Romo,* 47 Cal.App.3d 976, 986, 121 Cal. Rptr. 684, 690 (1975); *Youngker v. State,* 215 So.2d 318, 324 (Fla.Dist.Ct.App.1968); *State v. Taylor,* 445 S.W.2d 282, 284 (Mo. 1969); *State v. Pendergrass,* 586 P.2d 691, 698 (Mont.1978); *State v. Encee,* 79 N.M. 23, 24, 439 P.2d 240, 241 (1968); *Rhyne v. State,* 514 P.2d 407, 409 (Okl.Crim.App. 1973); *State v. Hall,* 13 Wash.App. 620, 622, 536 P.2d 680, 682 (1975).

Because our substantial evidence test is generally consistent with *Jackson,* we refuse to abandon it. One aspect of that test, however, requires modification.

■■■ We have often stated that "[i]t is necessary to consider only the supporting evidence whether contradicted or not" when considering sufficiency of the evidence. *Tokatlian,* 203 N.W.2d at 119. We now hold instead that although Iowa courts view the evidence in the light most favorable to the prosecution they must consider *all* the evidence when determining the sufficiency of the evidence to support a guilty verdict. *See Jackson,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573 ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution."). A court could not determine whether any rational factfinder could have returned a guilty verdict if the court considered only the evidence which supports guilt, because a rational factfinder cannot render a verdict without taking into consideration all the evidence in the record. *See Jackson,* 443 U.S. at 336, 99 S.Ct. at 2798, 61 L.Ed.2d at 585 (Burger, C. J., and Stevens and Rehnquist, JJ., concurring in judgment). We therefore abandon the rule enunciated in *Tokatlian* and earlier cases that only the supporting evidence is considered when the sufficiency of evidence to support a guilty

verdict is challenged. This modification of the *Tokatlian* rule applies only to trials of criminal prosecutions beginning on or after the day the present opinion is filed, and to cases tried before the filing of this opinion in which the question was preserved and which are now on appeal or are timely appealed after the filing of this opinion.

II. *Sufficiency of evidence in this case.* Robinson's contention that insufficient evidence was introduced at trial to support conviction is based largely on the character of the evidence the State introduced. He asserts that the only evidence presented to establish his presence at the scene of the crime was eyewitness testimony, but the eyewitness testimony was of such a low probative value that no rational trier of fact could believe it beyond a reasonable doubt. He also asserts that the guilty verdict is manifestly contrary to the evidence. Iowa R.Crim.P. 23(2)(*b*)(6).

The prosecution based its case on eyewitness testimony of three individuals who were present at the scene of the crime. These witnesses were the president, the manager, and an employee of the lounge.

Each of these key prosecution witnesses was acquainted with Robinson prior to the attempted robbery. All three of them testified to seeing him in Robert's Lounge sometime between 9:00 p. m. and midnight on the evening of July 18, 1978. They each testified to seeing him enter the front door of the lounge at approximately 1:15 a. m. on the morning of July 19, 1978, carrying a sawed-off shotgun. Robinson's head was covered and he was wearing a handkerchief over the lower part of his face. The three eyewitnesses made their observations from distances of sixteen feet, fifteen feet, and eight feet, respectively. The witness who identified Robinson from a distance of eight feet was seated at a disc-jockey stand, which was the most brightly illuminated area of the lounge. The three eyewitnesses had "no doubt" that Robinson was the man who entered the front door of the lounge with the shotgun.

Robinson based his defense in part on alibi testimony of two witnesses, Leane

Banks, his girl friend, and Michael Duke, another friend. He attempted to prove that although he was in Des Moines until approximately 7:00 p. m. on the evening of July 18, 1978, he was in Cedar Rapids at the time of the attempted robbery.

Banks testified that she and Robinson left Des Moines for Cedar Rapids at approximately 7:00 p. m. on the 18th, after leaving her son with Robinson's niece, Jean Smith, in Des Moines. She further testified that after arriving in Cedar Rapids she and Robinson visited with a friend for an hour or two, and then went to a small bar called the "420 Club" where they stayed "about an hour." They then went to another club in Cedar Rapids called "Shake Your Booties" where they remained until 2:00 a. m. Duke corroborated this testimony in part by testifying that he met Robinson "at about 8:30" in the "420 Club" and accompanied him to "Shake Your Booties" where they remained until closing time.

In addition to this alibi testimony, Robinson introduced the testimony of Jean Smith to impeach the testimony of the other witnesses and show that Robinson was not the individual who entered the front door of Robert's Lounge on the morning in question. Smith, who was on the dance floor of the lounge at the time of the attempted robbery, testified that the individual with the shotgun was taller than Robinson. She also testified that Harper, a State's witness, was lying face down on the floor by the bar during the robbery and that after the robbery she heard Harper say to an officer that "he had no idea who it was."

After reviewing all the evidence in the light most favorable to the prosecution, we conclude the record contains substantial evidence to support the guilty verdict; a rational juror could find guilt beyond a reasonable doubt. We may infer that the jury found the testimony given by the State's witnesses to be more credible than that given by the witnesses for the defense; determination of the credibility of the witnesses and the weight of the evidence is the function of the factfinder. *State v. Herndon*, 257 N.W.2d 19, 22 (Iowa 1977) ("The

credibility of witnesses is for the jury."); *State v. Robinson*, 165 N.W.2d 802, 806 (Iowa 1969) ("The weight of the testimony is for the jury."). *See also, United States v. Bailey* (U.S.) 100 S.Ct. 624, 636, 62 L.Ed.2d 575 (1980) ("The Anglo-Saxon tradition of criminal justice, embodied in the United States Constitution and in federal statutes, makes jurors the judges of the credibility of testimony offered by witnesses."). Notwithstanding the possibility of misidentification in eyewitness' testimony, *United States v. Wade*, 388 U.S. 218, 229, 87 S.Ct. 1926, 1933, 18 L.Ed.2d 1149, 1158 (1967), we conclude on this record that a rational factfinder could find guilt. Similarly we reject Robinson's contention that his conviction was contrary to the evidence.

AFFIRMED.