STATE of Iowa, Appellee,

v.

Richard Leslie SCHRIER, Appellant.

No. 63390.

Supreme Court of Iowa.

Jan. 14, 1981.

Martha Shepard, Des Moines, and Charles F. Glenn, West Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Kathy Krewer, Asst. Atty. Gen., and Dan Johnston, Polk County Atty., for appellee.

Considered by LeGRAND, P. J., and UHLENHOPP, McCORMICK, LARSON and SCHULTZ, JJ.

SCHULTZ, Justice.

Defendant, Richard Leslie Schrier, appeals from his convictions of murder in the first degree in violation of sections 707.1–.2, The Code Supp.1977, and sexual abuse in the first degree in violation of sections 709.-1–.2, The Code Supp.1977. Defendant contends the trial court erred in overruling his motions for a directed verdict and for a new trial because the evidence was not sufficient to generate a jury question or to support the jury's verdict. We affirm.

In reviewing motions for a directed verdict and a new trial based upon sufficiency of the evidence in criminal cases, this court views the evidence in a light most favorable to the State. All legitimate inferences which may fairly and reasonably be deducted therefrom will be accepted. *State v. Jones*, 271 N.W.2d 761, 763 (Iowa 1978); *State v. Overstreet*, 243 N.W.2d 880, 883 (Iowa 1976). It is necessary to consider all of the evidence when determining evidential sufficiency. *State v. Robinson*, 288 N.W.2d 337, 340 (Iowa 1980).[1] A trial court's refusal to direct a verdict for a defendant will withstand challenge if there is any substantial evidence in the record tending to support the charge. *State v. York*, 256 N.W.2d 922, 927 (Iowa 1977). Similarly, a jury verdict of guilty is binding upon this court unless there is no substantial evidence in the record to support it or such finding is clearly against the weight of the evidence. *State v. Overstreet*, 243 N.W.2d at 884; *State v. Dahlstrom*, 224 N.W.2d 443, 448 (Iowa 1974). Substantial evidence means such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt. *State v. Robinson*, 288 N.W.2d at 339.

Our review of the record in accordance with the principles set out above reveals the following evidence.

Matthew Schrier, deceased, was the two-year-old son of defendant Richard Leslie Schrier and Linda Schrier. Defendant and his wife were not living together, however, and Matthew was living with defendant's parents, Richard Carl Schrier and Shirley Schrier, who, together with three of their sons, Randy, Preston, and Frank, resided at 3004 Carr Street, Des Moines, Iowa. Defendant also lived with his parents from time to time and was residing with them on June 28, 1978.

On that date a Des Moines Fire Department rescue unit responded to a call to the Schrier residence. When they arrived, at approximately 9:30 a. m., fire medics found defendant administering mouth-to-mouth resuscitation to Matthew on the living-room floor. The pupils of Matthew's eyes were

---

1. Our cases prior to *Robinson* held that it was necessary to consider only supporting evidence, whether contradicted or not. *See, e. g., State v. Tokatlian*, 203 N.W.2d 116, 119 (Iowa 1972). In *Robinson* we changed this rule to comport with the language of *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) ("Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence is to be considered* in the light most favorable to the prosecution.") (emphasis original). Although the modification of the *Tokatlian* rule was expressly made applicable only to criminal trials beginning on or after the date of the filing of *Robinson*, 203 N.W.2d at 340, we believe the evidence in this case meets the *Robinson* test.

dilated; he was not breathing; no heart beat was detectable; vomit was present around his mouth and neck; and there was a blueness about his lips, neck, and fingertips.

The medics questioned defendant concerning the cause of the accident. Defendant responded that he found Matthew in the driveway on the west side of the house in his present condition, and that there was nothing around him which could have caused the accident.

Matthew was taken by ambulance to Iowa Lutheran Hospital in Des Moines. When questioned by an emergency-room nurse, defendant again insisted he did not know the cause of Matthew's injury, and that Matthew could not have come into contact with a toxic substance. The nurse also questioned defendant about what appeared to be tire marks on Matthew's right leg. When she asked defendant whether Matthew could have been run over by a motorcycle or whether one could have fallen on him, defendant said no.

Physicians who examined Matthew in the emergency room diagnosed his condition as being caused by asphyxia, a lack of oxygen to the lungs. The physicians discovered multiple petechiae, red spots in the skin caused by rupturing capillary blood vessels, concentrated about his eyes, neck, and to a lesser extent over his upper chest. Expert medical witnesses testified that such petechiae are generally caused by extreme pressure around the neck or by suffocation. Expert medical testimony also established that the petechiae had occurred within the preceding hour or two.

A physician who questioned family members was advised by defendant's father that Matthew was found underneath a motorcycle in a state of unconsciousness. Defendant later informed a police officer that he found Matthew in the backyard lying between an old automobile and a motorcycle that was leaned up against the automobile, but that there was nothing pressed against his neck. He also told the officer that the tire mark on Matthew's leg was caused on June 27, the day before Matthew sustained the fatal injury at issue here, when defendant moved the motorcycle backward and hit Matthew with the rear tire, knocking him down. Defendant advised another police officer that he found Matthew lying behind the rear tire of the motorcycle, but that it was still leaning up against the automobile. He also told the officer that, according to his mother, the tire mark on Matthew's leg was the result of an incident that had occurred on June 27 when Matthew was on or around the motorcycle.

Medical examination during the afternoon of June 28th revealed a marked dilation of Matthew's anus and acute circumferential tears in the mucosal lining around the periphery of the anus. Expert medical testimony indicated that the dilation had been caused "by some large implement over a period of time," and that the mucosal tears had occurred somewhere between a few hours to a few days prior to the examination.

These findings prompted physicians to extract body specimens from Matthew's throat, trachea, stomach, and rectum on the evening of June 29. These specimens tested positively for acid phosphatase, a protein which is produced in the male prostate gland and emitted with semen. According to expert medical testimony, in order for acid phosphatase to be found at these anatomical locations Matthew would have had to have been sexually abused—penetrated both anally and orally with a male penis. The acid phosphatase was estimated to have been in Matthew's system from somewhere between twenty-four to forty-eight hours prior to the extraction of the specimens.

Expert medical testimony established that it is possible for an act of oral intercourse to cause asphyxia. An erect penis being pushed into the back of the throat could obstruct the nasal passage by pushing the palate upward and also prevent breathing through the mouth around the obstruction.

Matthew was transferred to Blank Memorial Hospital, a division of Iowa Methodist Hospital, in Des Moines and was kept alive by the use of an artificial respirator.

The Polk County Chief Medical Examiner testified that he examined Matthew on July 22, and it was evident at that time that brain death had occurred. The date of death was listed on the death certificate as July 5, 1978. An autopsy was performed on August 17. The Chief Medical Examiner testified that the cause of death was cerebral anoxia, lack of oxygen to the brain, which caused encephalomalacia, a softening and liquification of the brain. Neither the autopsy nor numerous medical tests were able to disclose the specific cause of the blockage of oxygen to Matthew's lungs.

Defendant was arrested on August 7 at KCCI television studios in Des Moines, where he gave a televised statement to the media. There was testimony that defendant stated that he had found Matthew between the old automobile and the motorcycle and picked up the motorcycle and shoved it forward so he could pick up Matthew. The record does not reveal whether defendant stated that Matthew was pinned between the automobile and the motorcycle or beneath the motorcycle, or whether he was merely between the motorcycle and the automobile. According to expert medical testimony, however, there was no conceivable way that Matthew's injury could have been caused by falling off of the motorcycle and becoming lodged between it and the automobile or by the motorcycle falling on him.

The State was required to prove that defendant engaged in a sex act with Matthew which caused serious injury, in order to obtain a conviction for sexual abuse in the first degree. § 709.2, The Code Supp. 1977; *see* id. § 702.17 (definition of "sex act"); id. § 702.18 (definition of "serious injury"). The State was also required, in order to obtain a conviction for murder in the first degree, to prove that the defendant killed Matthew while participating in a "forcible felony," id. § 707.2(2), which includes sexual abuse and felonious assault. Id. § 702.11. The State was required to prove each of these essential elements beyond a reasonable doubt. Iowa R.Crim.P. 21(9)(a). We must determine under the principles previously set out whether there is substan- tial evidence in the record to support the jury's verdict.

There is no direct evidence of either the cause of injury or the identity of the perpetrator. The State relied solely upon circumstantial evidence to prove these elements of the crimes charged. In *State v. O'Connell*, 275 N.W.2d 197, 204–05 (Iowa 1979), we eliminated distinctions formerly recognized between direct and circumstantial evidence in testing evidentiary sufficiency. Direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). Whether the evidence is direct or circumstantial, however, it must raise a fair inference of guilt; it must do more than create speculation, suspicion, or conjecture. *State v. Lewis*, 242 N.W.2d 711, 724 (Iowa 1976).

Defendant concedes that sufficient evidence exists in the record to support a finding of sexual abuse, and that Matthew sustained a serious injury that was the cause of his death. Defendant contends, however, that sufficient evidence does not exist either to establish the required causal connection between the sexual abuse and the injury that resulted in Matthew's death, or to prove that defendant committed the sexual abuse.

I. *The Cause of the Injury.* It is not disputed that Matthew's injury and death were the result of an obstruction of air to his lungs, which deprived his brain of oxygen for a critical period of time. The issue is whether an act of sex abuse caused that obstruction. We believe there is sufficient evidence in the record to support a finding that it did.

The acid phosphatase found in Matthew's body on the evening of June 29 was estimated to have been there from twenty-four to forty-eight hours, which supports a finding that an act of sex abuse occurred around the time of the injury. The existence of this chemical in Matthew's throat, trachea, and stomach indicates that this sexual abuse included an act of oral intercourse. From the presence of acid phosphatase in the child's trachea, vomit around his

mouth, and petechiae found on his face, a rational fact finder could have inferred that Matthew's breathing was obstructed by an erect penis, which caused his injury. This inference is reinforced by expert medical testimony that there was no evidence of abnormality or overt physical cause for the injury.

We hold that sufficient evidence exists in the record to allow a rational jury to find beyond a reasonable doubt that an act of sexual abuse caused the injury that resulted in Matthew's death.

■ II. *The Identity of the Perpetrator.* Defendant slept alone with Matthew the night before the injury and, according to witnesses, admitted finding Matthew after the injury. While opportunity to commit a crime or mere presence at the scene ordinarily is not a sufficient corroborative circumstance from which to infer guilt, *State v. Jellema*, 206 N.W.2d 679, 682 (Iowa 1973); *State v. O'Meara*, 190 Iowa 613, 622, 177 N.W. 563, 568 (1920), we believe that this, together with other evidence, constitutes substantial evidence of guilt.

A neighbor of the Schriers testified that the Schriers had dogs which would bark if strangers approached. The neighbor and Randy Schrier testified that the dogs did not bark at or near the time Matthew was injured. This supports an inference that the perpetrator of the act of sexual abuse was either a family member or familiar enough with the family that the dogs would not bark. This conclusion is reinforced by the dilation of Matthew's anus, which indicates that past sexual abuse had been committed by someone who had fairly regular access to the child over a period of time.

The only members of the Schrier family at home at the time of the injury were Mrs. Schrier, defendant, Frank, and Randy. Randy Schrier testified that neither he nor Frank did anything to Matthew.

More importantly, however, defendant gave inconsistent accounts of where and how he found Matthew. Defendant stated on different occasions that he found Matthew: in the driveway on the west side of the house, but there was nothing around him that could have caused the accident; between an old car and a motorcycle near a fence and travel trailer on the northeast side of the house, but there was nothing pressed against his neck; behind the rear tire of the motorcycle; and, in a statement to the media, between the car and motorcycle, and that he shoved the motorcycle out of the way so he could pick Matthew up. In *State v. Tornquist*, 254 Iowa 1135, 120 N.W.2d 483 (1963), the defendant testified that his stepdaughter had fallen in an automobile while riding with him a short time before she was taken to a hospital unconscious and not breathing and pronounced dead. In a prior statement to the police, however, defendant said nothing of a fall in an automobile, but stated that his stepdaughter had fallen down the cellar stairs. We concluded "that his story was not truthful at one point or other, or both; and . . . it was an independent circumstance tending to show guilt." *Id.* at 1145, 120 N.W.2d at 489. *See also State v. Feltes*, 51 Iowa 495, 501, 1 N.W. 755, 760 (1879) ("The fact that the defendant told stories in regard to the boy's disappearance is a circumstance tending to establish his guilt. . . ."). Therefore, we have approved the use of statements of an accused that are inconsistent as to causation of injury to infer guilt. Likewise, we conclude that defendant's inconsistent statements of where and how he found Matthew are probative circumstantial evidence from which the jury could have inferred guilt.

A question arises concerning the length of time defendant was alone with Matthew immediately prior to alarming his family of the child's plight. Randy Schrier testified that Matthew was alone in the backyard, and that Mrs. Schrier told defendant to check on him. He then indicated that the next thing he knew he heard a scream and saw defendant carrying Matthew in an unconscious condition. The jury was not required to believe Randy's testimony, however, A jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses. *State v. Wedelstedt*, 265 N.W.2d 626, 627 (Iowa), *cert. denied*, 439 U.S. 954, 99 S.Ct. 352, 58 L.Ed.2d 345 (1978).

We hold that sufficient circumstantial evidence existed in the record to allow a rational jury to find beyond a reasonable doubt that defendant committed the act of sex abuse that caused Matthew's death.

We have thoroughly considered all of defendant's contentions and find no merit in his assignments of error.

AFFIRMED.