**STATE of Iowa, Appellee,**

v.

**Avis Jackson BLAIR, Appellant.**

**STATE of Iowa, Appellee,**

v.

**James Lee BLAIR, Appellant.**

**Nos. 69505, 69523.**

Supreme Court of Iowa.

April 11, 1984.

**418**

Lu Ann White, Asst. Appellate Defender, for appellant Avis Jackson Blair.

Raymond E. Rogers, Asst. Appellate Defender, for appellant James Lee Blair.

Thomas J. Miller, Atty. Gen., Steven M. Foritano, Asst. Atty. Gen., and D. William Thomas, Asst. County Atty., for appellee.

Considered by HARRIS, P.J., and McCORMICK, McGIVERIN, SCHULTZ and WOLLE, JJ.

McGIVERIN, Justice.

A jury in a joint trial convicted the defendants, James Lee Blair and Avis Jackson Blair, of first-degree murder in violation of Iowa Code sections 707.1 and 707.2 (1981), and second-degree theft in violation of Iowa Code sections 714.1 and 714.2. In these consolidated appeals, defendants contend (1) the evidence was insufficient to support the verdicts of first-degree murder and (2) that they were denied the effective assistance of trial counsel. Finding no merit in either contention, we affirm the defendants' convictions.

I. *Sufficiency of the evidence.* Defendants moved for a judgment of acquittal, Iowa R.Crim.P. 18(8), on the murder charges at the end of the State's case and again at the close of all the evidence on the ground that the State had presented insufficient evidence to sustain a conviction. In both instances, the motions were overruled. Defendants individually assert on appeal that the record lacks substantial evidence to support a guilty verdict and judgment of conviction for first-degree murder.

Defendants did not testify at trial.

When reviewing the sufficiency of evidence, we view the evidence in the light most favorable to the State, including all legitimate inferences and presumptions which may fairly and reasonably be de-

duced from the evidence in the record. It is necessary to consider all of the evidence and not just the evidence supporting the verdict. A jury verdict is binding upon this court and will be upheld unless the record lacks substantial evidence to support the charge. Substantial evidence means evidence which would convince a rational trier of fact that the defendants are guilty of the crime charged beyond a reasonable doubt. *State v. LeGear*, 346 N.W.2d 21, 23 (1984); *State v. Wilkens*, 346 N.W.2d 16, 20 (1984); *State v. Freie*, 335 N.W.2d 169, 171 (1983); *State v. Aldape*, 307 N.W.2d 32, 39 (Iowa 1981); *State v. Schrier*, 300 N.W.2d 305, 306 (Iowa 1981).

From the evidence at trial, the jury could have found the following facts.

On February 13, 1982, the victim, Aaron Goolsby, was found clothed only in a t-shirt lying on his back on his bed in his Des Moines apartment with his hands and feet bound with nylon hose. He had been stabbed in the chest three times and an autopsy revealed that those wounds were the cause of his death. It was obvious that some time had passed since his death for the body was described by the pathologist as being in a state of "marked decomposition." The pathologist further testified that he was unable to pinpoint the date or time of death because of the body's severely decomposed condition. For purposes of his autopsy report, the pathologist first estimated the date of death to be February 8. He emphatically testified at trial, however, that the date of death could not be accurately determined because of the body's condition. He could not rule out the possibility that the death could have occurred anytime between February 1 and 11.

The certificate of title to the victim's automobile was found by the police in a thorough search of the victim's apartment. His automobile, however, was missing. Avis Jackson Blair's fingerprints were discovered on several beer cans and a meat package, both of which were found in a trash basket in the victim's apartment.

The jury could have found, based on substantial evidence in the record, that the victim was last seen alive in the company of defendants. A woman testified that on February 4, at approximately 5:00 p.m., defendants with suitcases in hand approached her in the lobby of Iowa Lutheran Hospital in Des Moines and asked for the location of the black neighborhood in Des Moines. Defendants also told her they desired to leave Iowa and go to a warmer climate. At that time, the victim entered the lobby on his way to visit his wife, who was a patient in the hospital. The witness asked the victim, whom she knew, if he would give defendants a ride to the black neighborhood. He agreed to do so, after talking with defendants.

On February 16, defendants were spotted at a rest area in the victim's car near Sonora, Texas. They were then arrested by a Texas policeman for the theft of the victim's automobile. Defendants initially identified themselves to officers as Pleasant Anthony Wilks and Veronica Renae Wilks. The authorities subsequently discovered their true identities to be James Lee Blair and Avis Jackson Blair. Defendants had in their possession an identification card belonging to a Raney Johnson.

In response to police questioning, James Blair stated that he had bought the car from Raney Johnson in Des Moines although he had never actually paid him for it. He further stated that Raney Johnson had ridden from Des Moines to Texas with Avis Blair and himself but that Johnson had been dropped off in Dallas. However, after being shown a pawn ticket from San Antonio, Texas, with Raney Johnson's name on it, James indicated that they had met Johnson briefly in San Antonio the day after they dropped him off in Dallas. The pawn ticket was the receipt for a radio that was taken out of the victim's car and pawned in San Antonio. James Blair also stated to police officers that he did not know the victim, Aaron Goolsby, nor had he ever been at his Des Moines apartment.

Avis Blair told the officers that she did not know the victim, had never talked with

the victim, and had never been to his apartment. She also said that they bought the car from Raney Johnson in Des Moines and that he had ridden with them to Dallas, Texas. She stated that Raney Johnson was dropped off in Dallas and they had not seen him again. She subsequently stated that they had met Raney Johnson again in San Antonio after she was advised of James' statement to that effect. She also told another officer that she had never been to Des Moines before her arrest and transportation to Des Moines on the present charges.

Raney Johnson, a resident of Kansas City, Missouri, testified that he did not know and had never before seen either James Blair, Avis Jackson Blair, or the victim, Goolsby. He further denied selling defendants a car, and also testified that prior to trial he had never been to Des Moines. Johnson stated that his identification card was lost or stolen in June of 1981.

Defendants gave notice of and presented an alibi defense, Iowa R.Crim.P. 10(11)(a), contending that the victim was killed during a time when they were out of the State of Iowa. Defendants presented telephone bills and testimony to show that they were in Oklahoma City, Oklahoma, on February 5 at 2:45 p.m. The evidence supported defendants' claim that they had made a collect phone call to James Blair's aunt from Oklahoma City. The telephone bills received in evidence further supported defendants' contentions that they had made long distance phone calls from various locations in Texas to Kansas City on February 6, 7, and 9. The telephone bills indicated that several of those calls had been charged to the victim Goolsby's Des Moines telephone number. One call was to a number found in a book on the person of James Blair. It was shown that an automobile drive from Des Moines to Oklahoma City takes approximately ten hours which indicates that defendants left Des Moines at or sometime prior to 5:00 a.m. on February 5.

Defendants attempted to show that the victim was still living after the time they apparently left Des Moines. However, there is substantial evidence in the record from which the jury could find that the victim was dead before the defendants left Des Moines.

A close friend of the victim testified that the victim stopped regularly at his home every morning at 6:00 a.m. for coffee and to drive his stepson to school. He said that the morning of February 4 was the last time the victim came to his house. He also testified that he saw the victim around noon on February 4 and the victim said he would stop by the friend's house around 3:00 p.m. that day but then never appeared. This friend telephoned the victim several times on the morning of February 5 and numerous times in the days thereafter but there was never any answer.

Another close friend of the victim testified that the victim drove her to work every morning. She said that she had talked by telephone to the victim on February 4 at 8:50 p.m., and he specifically mentioned that he would pick her up for work the next morning which was February 5. She said, that when the victim did not stop by to pick her up for work on the morning of February 5, she phoned, thinking he had overslept, but she received no answer.

 Defendants presented testimony by persons who thought they remembered seeing the victim on February 5 and 6. Although this evidence, if deemed credible by the jury, would substantiate defendants' alibi and serve to acquit defendants, we note that the jury is at liberty to believe or disbelieve the testimony of witnesses as it chooses, *State v. Schrier*, 300 N.W.2d at 309, and give such weight to the evidence as in its judgment the evidence was entitled to receive. *State v. Hall*, 214 N.W.2d 205, 210 (Iowa 1974). The very function of the jury is to sort out the evidence presented and place credibility where it belongs. *State v. Metcalf*, 260 N.W.2d 857, 860 (Iowa 1977); *State v. McCullough*, 226 N.W.2d 216, 217 (Iowa 1975).

 The State's case connecting defendants with the killing was based solely on circumstantial evidence. We note, how-

ever, that circumstantial evidence is not inferior evidence because direct and circumstantial evidence are equally probative. Iowa R.App.P. 14(f)(16). Whether the evidence is direct or circumstantial, however, it must raise a fair inference of guilt; it must do more than create speculation, suspicion, or conjecture. *State v. Schrier*, 300 N.W.2d at 308.

■ Furthermore, the State was required to prove the elements of first-degree murder beyond a reasonable doubt. *State v. Aldape*, 307 N.W.2d at 39. The State must show that the defendants killed the victim with malice aforethought and in a willful, deliberate, and premeditated manner. Iowa Code §§ 707.1, 707.2(1). Deliberation and premeditation may be shown by circumstantial evidence in one or more of three ways: (1) evidence of planning activity of the defendant which was directed toward the killing; (2) evidence of motive which might be inferred from entire relationships between defendant and victim; and (3) evidence regarding the nature of the killing. *State v. Wilkens*, 346 N.W.2d at 16; *State v. Freie*, 335 N.W.2d at 172; *State v. Harrington*, 284 N.W.2d 244, 247–48 (Iowa 1979).

Taking the evidence in the light most favorable to the State and drawing all reasonable inferences in favor of the verdict, there was substantial evidence from the nature of the killing and an apparent motive in the theft of Goolsby's auto to justify submission to the jury of the issue of defendants' premeditation and deliberation on the murder charges.

■ The fact that defendants had indicated their desire to leave Iowa for a warmer climate and were subsequently apprehended in Texas in the possession of the victim's automobile provides substantial evidence of a motive to deliberately and premeditatedly kill the victim in order to obtain possession of his automobile. The fact the certificate of title to Goolsby's car was still in his apartment tended to negate a sale of the car to defendants.

■ Even more persuasive evidence of premeditation and deliberation, however, is the violent nature of the victim's death. The victim was stabbed repeatedly in the chest apparently while his hands and feet were bound with nylon stockings. When considering the fact that the victim's hands and feet were bound it is difficult to conceive that the killing was anything other than deliberate and premeditated. The use of a deadly weapon accompanied by an opportunity to deliberate is evidence of malice, deliberation, premeditation and intent to kill. *State v. Wilkens*, 346 N.W.2d at 16; *State v. Mulder*, 313 N.W.2d 885, 888 (Iowa 1981), *cert. denied*, —— U.S. ——, 103 S.Ct. 90, 74 L.Ed.2d 83 (1982); *State v. Harrington*, 284 N.W.2d at 247. The amount of time required to bind a persons hands and feet is ample to show that an opportunity to deliberate existed. *See State v. Aldape*, 307 N.W.2d at 39 (premeditation and deliberation need not exist for any particular length of time).

■ The issue then becomes one of establishing the identity of the person or persons who killed the victim. In regard to showing that defendants were the individuals who carried out the deliberate and premeditated killing, we conclude the record provides substantial circumstantial evidence connecting defendants with the killing. The victim was last seen alive in the company of defendants, defendant Avis Jackson Blair's fingerprints were found in the victim's apartment, defendants were found in Texas with the victim's car without the certificate of title to the car having been transferred to them, and defendants engaged in a long-distance phone calling spree at the victim's expense, having charged several calls to the victim's telephone number. Furthermore, defendants denied ever meeting the victim and denied ever being in his apartment. Testimony at trial showed that the defendants had met the victim in the lobby of Iowa Lutheran Hospital in Des Moines and Avis Jackson Blair's fingerprints found in the victim's apartment revealed that she had indeed been to the victim's apartment. Defendants also stated that they bought the vic-

tim's car in Des Moines from a Raney Johnson who testified at trial that he had never before the trial met or seen the defendants, that he had never sold them any car, and that prior to his trial appearance he had never been to Des Moines. "A false story told by a defendant to explain or deny a material fact against him is by itself an indication of guilt. The false story is relevant to show that a defendant fabricated evidence to aid his defense." *State v. Odem*, 322 N.W.2d 43, 47 (Iowa 1982) (citations omitted).

■ Furthermore, defendants made several inconsistent statements to police officers. They at first identified themselves as Pleasant and Veronica Wilks and then later identified themselves as James and Avis Blair. They said that Raney Johnson had ridden with them as far as Dallas, Texas, where he was dropped off and that they did not see him thereafter; but later, when confronted with physical evidence of a pawn ticket from a San Antonio pawn shop bearing Raney Johnson's name and concerning a radio from the victim's car, they then said they had met Raney Johnson in San Antonio for a short time. We have said that a defendant's inconsistent statements are probative circumstantial evidence from which the jury may infer guilt. *State v. Schrier*, 300 N.W.2d at 309.

When all the evidence in this record is viewed in the light most favorable to the verdicts, a fair inference is established that defendants were the perpetrators of the killing of the victim. This inference rises above mere speculation, suspicion, or conjecture.

We conclude there was substantial evidence in the record to support the court's submission of the charge of first-degree murder to the jury as to defendants. We hold the trial court did not err in overruling defendants' motions for a judgment of acquittal.

II. *Ineffective assistance of counsel.* Defendants had separate attorneys in the joint trial. Each defendant now contends his or her attorney rendered ineffective assistance of counsel in several ways. Defendants ask only that we reserve these complaints for postconviction relief proceedings under Iowa Code ch. 663A because facts supporting their claim are inadequately developed in the record.

■ We note that an allegation must amount to more than a bald assertion in order to support a holding that the issue of ineffective assistance of counsel should be reserved for determination in postconviction proceedings. *See State v. White*, 337 N.W.2d 517, 519–20 (Iowa 1983).

■ We conclude defendants have sufficiently specified their claim of ineffective assistance in the following ways: (1) Avis Blair's assertion that her counsel failed to move to suppress, or to object to, letters introduced by the State which she had written and that were found in the victim's car after she was arrested; and (2) both defendants' assertions that their counsel failed to challenge the jury selection process on equal protection grounds. We conclude such allegations are preserved for postconviction proceedings as those contentions cannot be decided on the record before us. *See State v. LeGear*, 346 N.W.2d 21, 23 (Iowa 1984); *State v. Steltzer*, 288 N.W.2d 557, 560 (Iowa 1980).

■ Defendants also allege ineffective assistance concerning counsel's "failure to move to suppress certain evidence all of which is outside the present record." However, if such alleged prejudicial evidence is not in the record, then there can be no valid allegation that defendants were prejudiced by it. This is clearly a bald assertion without substance or logic. Relative to these allegations, the following applies from *State v. White*, 337 N.W.2d at 520:

The showing made here by defendant is inadequate to support a holding that the issue of ineffective assistance should be reserved for determination in postconviction proceedings. *See* Iowa R.App.P. 14(a)(4) (statement of the case in a brief "shall ... recite the facts relevant to the issues presented for review").... [W]e hold no claim of ineffective assistance of

counsel has been presented to this court. The postconviction court will decide if defendant has carried his burden to show a sufficient reason for not pursuing the issue on this appeal.

Having found no reversible error, we affirm defendants' convictions.

AFFIRMED.