# IN THE COURT OF APPEALS OF IOWA

No. 19-0353
Filed March 4, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**BRADLEY K. FENDER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

A defendant appeals his conviction for indecent exposure. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Sheryl Soich, Assistant Attorney General, for appellee.

Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

Bradley Fender appeals his conviction for indecent exposure. He argues the prosecution failed to prove beyond a reasonable doubt he was the person seen exposing his genitals to the victim. Viewing the evidence in the light most favorable the State, we affirm the district court's verdict.

## I.     Facts and Trial Proceedings

In February 2018, C.L. was helping out an injured neighbor. One afternoon, around 4 p.m., C.L. noticed an orange sticker on her neighbor's car and grew concerned it would be towed. Standing with her back to the street, C.L. was trying to remove the sticker when a black Monte Carlo pulled up beside her. The driver offered to help: "Are you having a hard time getting that sticker off?" C.L. replied: "Oh, I got it." But when she turned to see the speaker, she "then noticed a man was in his vehicle, he had his penis out and he was masturbating."

"Shocked and upset" by what she saw, C.L. "froze for a second." The man crassly asked her: "Do you want some dick?" C.L. was "disgusted" and told him: "I'm taking your license plate." He sped away. She walked to her car and wrote down the Monte Carlo's plate number. C.L. then went home, alerted her husband to what happened, and called police. She told police the man was wearing a dark stocking cap, a black sweatshirt, and dark pants. She could not see his hair, but "could see his face clearly." She described his "very large nose" and "deep-set" eyes that "were light in color."

In response to C.L.'s report, police ran the license plate number. "It came back to a black Monte Carlo with the registered owner being Bradley Fender." About ninety minutes later, police stopped Fender as he was stepping out of his

car.  The officer recorded the encounter on his body camera.  Fender was wearing an orange stocking cap, a navy New York Yankees jacket, and a pair of lighter-colored, but dirty jeans.  The officer told Fender the complaint involved "somebody exposing their bodily parts to somebody else."  The officer did not specify the witness reported seeing a man exposing his penis.  Fender responded: "I wouldn't waste my time because I think I might have a hernia."  Fender said he had been at work and denied letting anyone else drive his car that day.

Despite his denials, the State charged Fender with indecent exposure, a serious misdemeanor, in violation of Iowa Code 709.9 (2018).  He waived his right to a jury trial.  At the bench trial, C.L. identified Fender as the man she saw masturbating.  Fender took the stand to deny that allegation.  He testified he left work at 3:30 p.m. and had never seen C.L. before.  The district court found Fender guilty beyond a reasonable doubt.  On the record, the court discounted the defense argument that C.L.'s identification was insufficient:

> It's very clear that [C.L.] identified the defendant.  There is no doubt in the court's mind the defendant was identified.  There may be some differences in clothing, but the fact is that the defendant actually states he was the only person that operated the motor vehicle that day and [C.L.] identified the vehicle, identified the license plate, and there is no dispute as to what she viewed in the vehicle.

Fender appeals his conviction, raising a single claim that the State did not offer substantial evidence to prove he was the person C.L. identified to police as exposing his genitals.

## II.  Scope and Standard of Review

We review Fender's challenge to the sufficiency of the evidence for correction of legal error.  *See* Iowa R. App. P. 6.907.  The measure for sufficient

evidence in bench trials is the same as in jury trials. *State v. Myers*, 924 N.W.2d 823, 826–27 (Iowa 2019). We view the record in the light most favorable to the court's verdict. *Id.* If substantial evidence supports that verdict, we will affirm. *Id.* Evidence is substantial when "a rational trier of fact could conceivably find the defendant guilty beyond a reasonable doubt." *State v. Thomas*, 561 N.W.2d 37, 39 (Iowa 1997).

### III.     Analysis

The crime of indecent exposure has four elements:

- The exposure of genitals or pubes to someone other than a spouse;
- That act is done to arouse the sexual desires of either party;
- The conduct offended the viewer; and
- The actor knew, or under the circumstances should have known, the conduct would offend the viewer.

*See* Iowa Code § 709.9; *State v. Isaac*, 756 N.W.2d 817, 819 (Iowa 2008).

Beyond those statutory elements, "[t]he State has the obligation in a criminal case to prove the identity of the individual who committed the crime and to do so beyond a reasonable doubt." *State v. Davis*, 259 N.W.2d 812, 813 (Iowa 1977), *abrogated on other grounds by State v. Folkerts*, 703 N.W.2d 761 (Iowa 2005).

Fender focuses on that proof of identity. He points out C.L. described the suspect as wearing a dark stocking cap, a black sweatshirt, and dark pants when she spoke to the officer shortly after the crime. When stopped about ninety minutes later in front of his home, Fender was wearing an orange knit cap, a dark windbreaker jacket, and light-colored jeans. He contends "the discrepancy between [C.L.'s] description of the clothing the suspect was wearing and what the defendant was wearing is troubling."

To counter, the State argues: "The fact that the victim's description of Fender's clothing was not a perfect match to the clothes he was wearing when apprehended does not destroy the sufficiency of the evidence." The State points out the district court could have reasonably believed Fender changed his clothes during the time lapse. Or alternatively, "the court may have reasonably concluded that the victim was simply mistaken in her recall of the defendant's clothing, especially in light of the startling event of seeing a masturbating stranger who crudely propositioned her."

While a valid consideration for the factfinder, we do not find the variance in Fender's attire to be fatal to the guilty verdict. It is the factfinder's function to "sort out the evidence" and "place credibility where it belongs." *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) (citation omitted). The district court placed credibility on C.L.'s description of Fender's car and her notation of his license plate number right after the crime. The record revealed no other means or motivation for her to identify his car as being used in the crime other than her true recollection of events. The court also credited her in-court identification of Fender.[1]

As our bottom line, when we view the evidence in the light most favorable to the State, Fender's objections do not convince us to disturb the court's verdict. The State presented substantial evidence to support C.L.'s identification of Fender as the offender. *See State v. Robinson*, 288 N.W.2d 337, 341 (Iowa 1980)

---

[1] In its ruling, the district court did not mention C.L.'s description of Fender's facial features to the responding officer. But in watching the trial exhibit footage of Fender from the officer's body camera, we believe her contemporaneous description of his distinctive facial features was accurate and consistent with her in-court identification. *See Scott v. Harris*, 550 U.S. 372, 378 n.5 (2007) (allowing a video to "speak for itself" in a civil case involving a vehicle chase).

(upholding finding of guilty despite possibility of misidentification in eyewitness's testimony).

**AFFIRMED.**