**James L. BLAIR, Appellant,**

v.

**STATE of Iowa, Appellee.**

**No. 90–1877.**

Court of Appeals of Iowa.

Aug. 27, 1992.

Lylea Dodson Critelli of Nick Critelli Associates, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas S. Tauber, Asst. Atty. Gen., John Sarcone, County Atty., and William Thomas, Asst. County Atty., for appellee.

Heard by OXBERGER, C.J., and SCHLEGEL and HABHAB, JJ.

HABHAB, Judge.

## FACTS

The defendant, James Blair, is currently serving a life sentence after his conviction for first-degree murder and theft. His conviction was affirmed by the Iowa Supreme Court in *State v. Blair*, 347 N.W.2d 416 (Iowa 1984). On September 25, 1984, Blair filed an application for postconviction relief alleging his trial counsel had been ineffective in failing to challenge the jury panel and to adequately investigate and locate witnesses who could have aided in his defense. Blair also raised additional issues: (1) absence of opportunity to confer with his codefendant or to coordinate defense efforts; (2) failure of the evidence to establish his presence at the scene of the homicide; (3) erroneous jury instructions; (4) erroneous admission of hearsay; (5) the cumulative effect of all error; and (6) the failure of the State to allege a specific time or date of the homicide.

The district court held trial counsel was not ineffective for failing to challenge the jury selection process. The district court also determined trial counsel made an adequate search for witnesses who could have helped the defense. The district court, however, refused to rule on the other issues raised after finding Blair had presented no good reason why these issues had not been previously raised on appeal. Blair has appealed. We affirm.

■ We note at the inception the defendant did not object to the composition of the jury at any time prior to the finding of his guilt of first-degree murder for the February 13, 1982, killing of Aaron Goolsby. It is clear under present case law that a defendant's failure to object to the jury panel in accord with rule 17(3) (statutory challenges to the jury panel must be made before being sworn) waives consideration on appeal of the issue whether the method of selecting jurors violated the requirements of Iowa Code section 607A.22. *State v. Johnson*, 476 N.W.2d 330 (Iowa 1991). Likewise, a defendant's failure to object to the composition of the jury panel until a motion in arrest of judgment or for new trial also waives consideration of a constitutional challenge. *Id.* at 333.

The case of *State v. Johnson* explains our supreme court's reasoning in this area:

Here, defendant [Johnson] did not object to the composition of the jury panel until his post-verdict motion in arrest of judgment or for new trial. The timing of this objection cannot be said to have been raised "at the earliest opportunity" after the grounds therefore became apparent. [citation omitted] Defendant had ample opportunity to view the jury panel during the jury selection process, but failed to object to it during this time or even during trial. Defendant cannot now urge a ground for reversal in his post-verdict motion not urged during trial. [citations omitted]

For us to hold otherwise would ignore one of the purposes of the preservation

requirement, which is to give notice to the court and opposing counsel. *State v. Tobin*, 333 N.W.2d 842, 844 (Iowa 1983). Making objections at the earliest possible opportunity gives a trial court the opportunity to take any necessary corrective action at a time when correction is still possible. [*State v.*] *Gibb*, 303 N.W.2d [673] at 680 [Iowa 1981].

A post-verdict motion challenging the jury panel simply comes too late to comply with the policies behind the preservation requirement. At the time of defendant's motion, the only corrective action the trial court could have taken would have been to sustain the motion for new trial and conduct a second trial in front of a second jury. To avoid such a waste of judicial resources at that stage, it was incumbent upon defendant to lodge his objection at the earliest possible opportunity. Indeed, we will not allow defendant to "gamble on the verdict and then complain." *State v. Thompson*, 326 N.W.2d 335, 338 (Iowa 1982).

*Id.* at 334.

■ However, although postconviction proceedings are inappropriate for the presentation of issues which have not been properly preserved, *Washington v. Scurr*, 304 N.W.2d 231, 234–35 (Iowa 1981), ineffectiveness of counsel is sufficient reason for not having raised the issues earlier. *Lamphere v. State*, 348 N.W.2d 212, 215 (Iowa 1984). We turn, then, to the ineffectiveness claims.

## SCOPE OF REVIEW

■ Ordinarily, our review of postconviction relief proceedings is for errors of law. *Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980) (citation omitted). However, when a postconviction petitioner asserts violation of constitutional safeguards—such as ineffective assistance of counsel—we make our own evaluation based on the totality of the circumstances. This is the equivalent of de novo review. *Id.* (citations omitted).

■ In order to prevail on such a claim, appellant must show by a preponderance of the evidence that (1) counsel failed to perform an essential duty and (2) preju-

dice resulted. *See Edman v. State*, 444 N.W.2d 99, 101 (Iowa App.1989); *State v. Risdal*, 404 N.W.2d 130, 131 (Iowa 1987). In evaluating counsel's performance, we presume that counsel acted competently. *See Risdal*, 404 N.W.2d at 131.

■ Established principles govern our review of defendant's sixth amendment claim that trial counsel was ineffective. Our ultimate concern is with "the fundamental fairness of the proceeding whose result is being challenged." *Strickland v. Washington*, 466 U.S. 668, 696, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984). Ineffective assistance is measured by whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93; *see Schertz v. State*, 380 N.W.2d 404, 408 (Iowa 1985). "Reasonableness under prevailing professional norms" is the standard by which we measure counsel's performance. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

### I. *Jury Selection Process.*

Blair first argues trial counsel was ineffective in failing to challenge the jury selection process. Blair is black. He maintains blacks had been systematically excluded from the jury process and that this procedure was violative of the sixth amendment. At Blair's trial, only one black person was drawn for possible service on the jury. This potential jurywoman was excused at her own request because she told the court jury service would "work a hardship" on her.

As noted, this matter comes to us by way of Blair's petition for postconviction relief. Following an evidentiary hearing, the trial court denied Blair's petition. In doing so, it essentially held there was no evidence produced which established how blacks or persons of other minority groups were selected on the panel for possible jury service on Blair's trial or how many blacks or persons of other minority groups were on the entire jury panel. It stated further

there was no evidence of any selection or system of selection that did or was designed to eliminate the selection of blacks or other minority persons for jury service nor was there evidence of any exercise of peremptory challenges by the prosecutor to remove from the venire any members of the defendant's race.

The rule of law as it relates to the sixth amendment's requirement of a fair cross-section of jurors is well settled. "A defendant challenging the composition of a jury panel must first establish a prima facie violation of the sixth amendment's fair cross-section requirement." *State v. Watkins*, 463 N.W.2d 411, 414 (1990) (citing *Duren v. Missouri*, 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87 (1979)).

To establish a prima facie violation of the cross-section requirement, the defendant "must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process."

*Id.* (quoting *Duren*, 439 U.S. at 364, 99 S.Ct. at 668, 58 L.Ed.2d at 586–87).

The first prong of this test was satisfied. Blacks constitute a distinctive group in the community for purposes of a cross-section analysis. *Id.* However, Blair failed to produce any evidence as to the proportion of blacks in Polk County. Additionally, the district court pointed out in the postconviction action that Blair failed to introduce any evidence of systematic exclusion of blacks from the jury selection process. We find the second and third prongs of the test for a prima facie violation of the sixth amendment's fair cross-section requirement were not satisfied. We do not believe the appellant seriously challenges this finding. We affirm on this issue.

The appellant next asks that if we find the trial court's ruling denying relief was correct, that we preserve the issue of whether postconviction counsel was ineffective in failing to investigate and present evidence of the jury composition and selection procedure which were in effect at the time of Blair's 1982 trial. Essentially what Blair requests is that he now be permitted to reexamine the 1982 jury venire to determine if there is a violation of the sixth-amendment jury cross-section requirement. We decline this invitation.

Blair bears the burden of proof that counsel's performance was so deficient that counsel was not functioning as the counsel guaranteed by the sixth amendment and that the deficient performance so prejudiced the defense as to deprive the defendant of a fair trial. In addition, Blair must overcome a presumption that counsel is competent and demonstrate under the entire record and totality of the circumstances counsel's performance was not within the range of normal competency. *Brewer v. State*, 444 N.W.2d 77, 83 (Iowa 1989) (citing *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984)).

As for proof of prejudice, Blair must show that counsel's failure worked to his substantial and actual disadvantage, to the end that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* (citing with approval *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069, 80 L.Ed.2d at 699). The Supreme Court stated in *Strickland*, "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692–93.

It is recognized that the sixth-amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial. *Id.* at 684, 104 S.Ct. at 2063, 80 L.Ed.2d at 691.

The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial

largely through the several provisions of the Sixth Amendment, including the Counsel Clause: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence [sic]."

The proper standard for attorney performance is that of reasonably effective assistance considering all the circumstances. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

It is well settled that no particular set of detailed rules for counsel's conduct can satisfactorily take into account the variety of circumstances faced by defense counsel. *Id.* at 688–89, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id.* at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694.

As the United States Supreme Court stated in *Strickland:*

Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to secondguess [sic] counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. [citation omitted] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.*

As the Court in *Strickland* further found, "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. Further, "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Id.* at 692, 104 S.Ct. at 2067, 80 L.Ed.2d at 696. In this respect, "it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697. As the Court stated in *Strickland*, "Virtually every act or omission of counsel would meet that test (citation omitted) and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.*

From the circumstances before us, we are unable to conclude trial counsel and postconviction counsel acted unreasonably or failed to function as the "counsel" guaranteed by the sixth amendment. Viewing counsel's challenged omissions as of the time of counsel's conduct, we find counsels' acts or omissions were not "outside the wide range of professionally competent assistance." *See Id.* at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. We are unable to conclude Blair did not receive a fair trial as a result of counsels' acts or omissions nor can we find prejudice. Blair has failed to establish the required elements in a claim of ineffective assistance of counsel. We affirm the district court on this issue.

## II. *Failure to Locate Witnesses.*

■ Blair maintains his trial counsel was ineffective in failing to adequately investigate and locate witnesses who would support his alibi defense and impeach one of the State's witnesses. Blair specifically

alleges that if Ronnie Rhodes had testified at trial, his testimony would have directly contradicted that of Raney Johnson.

The record shows Blair's counsel made reasonable efforts to locate Rhodes and Hubert Whitney but could not find them because they were deliberately hiding from the police. Rhodes was deliberately hiding because he was wanted for murder in an unrelated case. Whitney was deliberately hiding for unknown reasons. Blair's counsel made two personal trips to Kansas City in search of these witnesses because Blair had informed counsel Rhodes and Whitney lived there. Blair's counsel arranged at least two meetings with Rhodes and Whitney but both failed to appear. Blair's counsel never found Rhodes or Whitney but there is no evidence Blair gave his counsel information regarding their whereabouts which counsel failed to pursue.

Moreover, counsel did locate the most important alibi witnesses who could testify to the telephone calls Blair had placed to them from Oklahoma and Texas. Blair's counsel and counsel for the codefendant considered these to be the most important alibi witnesses because this testimony was corroborated by telephone company records.

We find Blair's counsel acted diligently and thorough in attempting to locate Rhodes and Whitney. We are unable to conclude Blair's counsel had a duty to search further in what appeared to be a futile effort. We also note Blair's counsel did not consider Rhodes and Whitney to be the most important alibi witnesses. We find trial counsel's decision to stop searching for Rhodes and Whitney to be a tactical decision which was reasonable. Therefore, we hold Blair failed to show trial counsel failed to perform an essential duty and that he suffered prejudice. We affirm the district court on this issue.

## CONCLUSION

We determine any other issues raised by Blair are either without merit or were not properly preserved. After considering all issues presented, we affirm the district court's denial of postconviction relief.

Costs of this appeal are taxed to the appellant.

AFFIRMED.