# IN THE COURT OF APPEALS OF IOWA

No. 15-0482
Filed May 25, 2016

**JAMES LEE BLAIR,**
        Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
        Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Richard G. Blane II,

Judge.

James Blair appeals following the denial of his second application for

postconviction relief.  **AFFIRMED.**

Gary Dickey of Dickey & Campbell Law Firm, PLC, Des Moines, for

appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

Considered by Vogel, P.J., and Doyle and Bower, JJ.  Blane, S.J., takes

no part.

**DOYLE, Judge.**

James Blair appeals following the summary disposition and dismissal of his second application for postconviction relief (PCR). He argues he was denied his right to counsel in the PCR action. He also argues the summary judgment ruling must be reversed because the PCR court relied on a ground not asserted in the State's motion for summary judgment. In a pro se brief, Blair argues his sentence is illegal.

### I. Background Facts and Proceedings.

In 1982, Blair was convicted of first-degree murder and second-degree theft. Our supreme court affirmed his convictions on direct appeal. *See State v. Blair*, 347 N.W.2d 416, 418 (Iowa 1984). The denial of Blair's first PCR application, filed in 1984, was affirmed by this court. *See Blair v. State*, 492 N.W.2d 220, 221 (Iowa Ct. App. 1992).

In 2014, Blair filed his second PCR application. The State moved for summary judgment on the grounds that Blair's PCR application was filed after the limitations period set forth in Iowa Code section 822.3 (2013) had expired. In response, Blair argued his claim fell within the exception to the statute of limitations because it was based on a new ground of law—specifically, our supreme court's holding in *State v. Heemstra*, 721 N.W.2d 549, 558 (Iowa 2006) (holding that if an act causing willful injury as a forcible felony is the same act that causes the victim's death, it cannot serve as the predicate felony for felony-murder purposes), which Blair claimed was a substantial change in the law.

The PCR court entered its order dismissing Blair's PCR application on January 22, 2015. It found "that under the undisputed facts, Blair does not have

a *Heemstra* claim," and on that basis, the court concluded Blair's PCR application "has no merit and is subject to summary disposition under Iowa Code section 822.6." After his motion to enlarge was denied, Blair appealed.

## II. Right to PCR Counsel.

Blair first claims his right to counsel was violated when the PCR court rescinded the appointment of counsel.[1] Because an indigent applicant need not always be appointed representation in a PCR proceeding, the determination of whether to appoint counsel rests in the court's discretion. *See Wise v. State*, 708 N.W.2d 66, 69 (Iowa 2006).

Blair indicated in his PCR application that he did not want an attorney appointed to represent him. However, the PCR court misread the application and appointed counsel for Blair. After realizing the error, the court entered an order directing Blair to confirm in writing whether he wished to continue with representation by counsel. In response, Blair stated he did not wish "to out-right discharge nor reject" the assistance of counsel and instead requested that counsel "assist as an advisor." Blair then outlined a list of tasks he wished counsel to perform in an "advisor role." The PCR court rescinded the

---

[1] The right to counsel in PCR proceedings is granted by statute. *See* Iowa Code § 822.5 (providing costs of legal services shall be made available to an indigent applicant); *Lado v. State*, 804 N.W.2d 248, 250 (Iowa 2011). Blair asks us to find a PCR applicant also has a constitutional right to counsel in PCR proceedings under article I, section 10 of the Iowa Constitution. He concedes that our supreme court has held there is no state or federal constitutional right to PCR counsel, *see Lado*, 804 N.W.2d at 250, but claims "[n]o reported Iowa case . . . has ever engaged in any independent, substantive analysis of the right to counsel under article I, section 10 as is constitutionally required." In light of the supreme court precedent that unequivocally states there is no right to PCR counsel under the state constitution, we decline to reach the opposite conclusion. *See State v. Eichler*, 83 N.W.2d 576, 578 (Iowa 1957) ("If our previous holdings are to be overruled, we should ordinarily prefer to do it ourselves."); *State v. Hastings*, 466 N.W.2d 697, 700 (Iowa Ct. App. 1990) ("We are not at liberty to overturn Iowa Supreme Court precedent.").

appointment of counsel, stating: "Blair in his letter proposes a 'remedy.' The court does not bargain over a remedy." After noting that Blair's PCR application did not request a court-appointed attorney, the court rescinded the appointment. We find no abuse of discretion by the PCR court.

Even if Blair's response could be construed as a request for appointment of counsel, the PCR court did not abuse its discretion in rescinding the appointment. We review the PCR court's decision regarding the appointment of counsel in the light most favorable to Blair. *See Fuhrmann v. State*, 433 N.W.2d 720, 722 (Iowa 1988). If a PCR application has no merit on its face, the PCR court is not required to appoint counsel. *See Wise*, 708 N.W.2d at 70. If a PCR application fails to raise a cognizable claim, "'it is wasteful to appoint counsel to determine solely if the applicant has some grounds for relief not stated in his original application.'" *Furgison v. State*, 217 N.W.2d 613, 615 (Iowa 1974) (citation omitted). In making a determination of whether to appoint counsel, the court may consider whether the applicant has unsuccessfully sought PCR in the past with the aid of counsel. *See id.* If it appears a substantial issue of law or fact may exist, the court should appoint counsel. *See id.* at 615-16.

This is Blair's second PCR application. It was filed more than thirty years after he was convicted—a period ten times greater than the limitation period set forth in section 822.3. The burden of showing a PCR application was filed within the exception to the three-year statute of limitations is on the applicant. *See Cornell v. State*, 529 N.W.2d 606, 610 (Iowa Ct. App. 1994). Blair claims the supreme court's decision in *Heemstra* provides a new ground of law previously unavailable to him. Assuming for the sake of argument that Blair is correct, the

*Heemstra* decision was filed more than three years before Blair initiated the present PCR action. His PCR application is therefore untimely. *See, e.g.*, *Sihavong v. State*, No. 14-0440, 2016 WL 351286, at *2 (Iowa Ct. App. Jan. 27, 2016) (finding a PCR application filed in February 2013 raising *Heemstra* claims was untimely under section 822.3 because it was filed more than three years after *Heemstra* was decided). Again, we find no abuse of discretion by the PCR court in rescinding the appointment of counsel.

### III. Summary Judgment.

Blair next argues the PCR court erred in granting summary judgment on grounds not asserted in the State's motion for summary judgment. Specifically, he claims the State's motion only asserted one issue—that Blair's claims were barred by section 822.3. However, the PCR court dismissed the PCR application after finding Blair's substantive-law claims had no legal merit.

Iowa Code section 822.6 provides two ways in which a PCR application may be summarily disposed. First, the court may dismiss the application on its own motion if it is satisfied the applicant is not entitled to PCR and no purpose would be served by any further proceedings. *See* Iowa Code § 822.6. Second, the court may grant a motion by one of the parties for summary disposition if it appears there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See id.* Blair argues that by granting summary disposition on grounds not raised in the State's motion, the court was acting on its own motion. He alleges the court did so improvidently because he was never given notice of the court's intention to dismiss the application and its reasons for dismissal, nor was he given an opportunity to reply to the proposed dismissal.

*See id.* (requiring the court to "indicate to the parties its intention to dismiss the application and its reasons for dismissal" and to give the applicant "an opportunity to reply to the proposed dismissal").

The provisions of section 822.6 protect a PCR applicant from the dismissal of a PCR application without an opportunity to resist in some manner. *See Hines v. State*, 288 N.W.2d 344, 346 (Iowa 1980). Those concerns are not present here. Blair was informed of the PCR court's concerns about the applicability of *Heemstra*. He had knowledge that his failure to adequately address those concerns could lead to dismissal. He was afforded an opportunity to respond.

The court first raised its concerns at the July 2014 hearing on Blair's motion to extend time, where the following exchange occurred at the hearing:

> THE COURT: Well, I'm just going to tell you . . . , I have reviewed and read the original supreme court opinion in your appeal . . . . And they set forth the underlying facts of your conviction. And the first big issue that they address is whether or not there was evidence of premeditation. In other words, you weren't convicted of felony murder based upon a willful injury. You were convicted of first-degree murder based upon premeditation.
> [BLAIR]: However, willful injury was an instruction provided to the jury.
> THE COURT: Well, I guess I have not looked at your court file from that case and looked at that, but the question would be if willful injury was instructed on as a lesser-included offense . . . . [B]ut the supreme court found you were guilty of premeditation and, therefore, guilty of first-degree murder. They did not find you guilty of willful injury leading up to first-degree murder.
> [I]f there's no willful-injury predicate, you don't fall under the *Heemstra* argument.
> [BLAIR]: I understand that.
> THE COURT: Okay. And that's what I'm trying to get to . . . . I just will need to decipher whether or not you have truly a *Heemstra* claim and then, if you do, then I have to get into these procedural statute-of-limitation issues.

But if you don't have a *Heemstra* claim to start with, . . . I don't even get to the procedure because you don't have a claim to start with if that's the case.

Are you following me?

[BLAIR]: I'm following you.

At the end of the hearing, the court again mentioned its concern regarding a *Heemstra* claim, stating: "[I]f you are really basing this on the *Heemstra* argument, I think you have to look hard on whether you fit the criteria." This interaction was memorialized in the court's written order granting the extension:

Finally, the court advised . . . Blair that [it] had reviewed the Iowa Supreme Court opinion that affirmed his convictions[, *see Blair*, 347 N.W.2d at 416,] and finds that the first-degree-murder conviction was based upon premeditation, not felony murder where the predicate felony was willful injury. Thus, it would appear that claims based on the *Heemstra* case would not apply in this case. The court has not reviewed the court file. The court advised [Blair] to only make claims that are viable and not previously made in his earlier PCR and federal habeas corpus applications but that he could certainly make any claims he believed were viable.

Four months later, at another hearing to extend the time to file a resistance, the PCR court again emphasized to Blair how necessary it was for him to address the *Heemstra* ruling's applicability to his case:

THE COURT: Again, Mr. Blair, I reviewed your . . . amended application. . . . And, you know, it appears that it's still relying on this *Heemstra* case. . . .

[BLAIR]: . . . I believe *Heemstra* is arguably applicable, Your Honor.

THE COURT: Well, you know, we've talked about that before. And I'll certainly let you make your arguments, but that's what you're going to have to probably address in this summary judgment, too.

[BLAIR]: Yes.

THE COURT: And . . . that's what I'm going to have to address, is whether *Heemstra* applies. So you make your arguments and make sure you give me everything you've got.

[BLAIR]: I would.

On December 23, 2014, the State's motion for summary judgment was heard. At that hearing, the court clarified that Blair's PCR claims were premised on the *Heemstra* ruling:

> THE COURT: Okay. Mr. Blair, I want to make sure that I understand. Your legal argument here is twofold. Number one, you want the court to find an extraordinary circumstance that . . . your claim is not time-barred.
> [BLAIR]: That is correct.
> THE COURT: Okay. And, number two, that your legal argument for your [PCR] is that you're entitled to a new trial under *Heemstra.*
> [BLAIR]: Yes. That is also correct.
> THE COURT: Okay. I just want to make sure that I know what your claims are.
> [BLAIR]: Based upon *Heemstra*, Your Honor, is the fundamental premise of my claim. I have other constitutional grounds that I would like to raise concerning *Heemstra*, but I don't believe now is the appropriate time. I believe that has to wait for either an evidentiary hearing or after you decide the summary judgment.
> THE COURT: Okay. Well, that's what I'm trying to make sure is that at this time, the way the pleadings are, is that your sole claim is *Heemstra*.
> [BLAIR]: *Heemstra* would be the foundation, Your Honor, of my first claim. All my issues revolve around *Heemstra*, though, the *Heemstra* decision. . . . All my constitutional questions revolve around the application of the *Heemstra* decision.

Blair had notice of the court's concerns regarding the applicability of *Heemstra* to his case. He was also provided an opportunity to address the court's concerns. In fact, both Blair's brief in support of his amended PCR application and his resistance to summary judgment devote an entire section to the applicability of *Heemstra*. The protections set forth in section 822.6 were afforded to Blair. Therefore, the court did not err in summarily dismissing Blair's PCR application on its own motion.

**IV. Sentence.**

In a pro se brief, Blair argues his sentence of life imprisonment without the possibility of parole is unconstitutional. Although he is raising this issue for the first time on appeal, a claim concerning the legality of a sentence may be raised at any time. *See State v. Lathrop*, 781 N.W.2d 288, 293 (Iowa 2010).

Blair claims his sentence is grossly disproportionate both as a general proposition and as applied to him. The threshold test for disproportionality "involves a preliminary judicial evaluation of whether the sentence being reviewed is 'grossly disproportionate' to the underlying crime." *State v. Bruegger*, 773 N.W.2d 862, 873 (Iowa 2009). This requires us to balance "the gravity of the crime against the severity of the sentence." *Id.* Only in "relatively rare" cases will we find "an unusual combination of features that converge to generate a high risk of potential gross disproportionality." *Id.* "If the sentence does not create an inference of gross disproportionality, then 'no further analysis is necessary.'" *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012) (citation omitted).

Blair has not cited any factors that create an inference of gross disproportionality. His failure to create an inference of gross disproportionality ends our inquiry. *See, e.g.*, *State v. Huls*, No. 15-0467, 2016 WL 903130, at *1 (Iowa Ct. App. Mar. 9, 2016) (holding an evidentiary hearing was not warranted on claim special sentence under section 903B.2 was grossly disproportionate where the defendant failed to argue any factors created an inference of gross disproportionality). Accordingly, we affirm his sentence.

**AFFIRMED.**