**IN THE COURT OF APPEALS OF IOWA**

No. 16-0154
Filed March 8, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TYREE LEE YOUNG,**
        Defendant-Appellant.
_____


Appeal from the Iowa District Court for Polk County, Jeanie Kunkle Vaudt,

Judge.


Tyree Young appeals his conviction and sentence for domestic abuse

assault.  **AFFIRMED.**



Mark C. Smith, State Appellate Defender, and Robert P. Ranschau,

Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Assistant Attorney

General, for appellee.



Considered by Potterfield, P.J., and Doyle and Tabor, JJ.

**DOYLE, Judge.**

After he assaulted his wife, Tyree Young was charged with three counts of domestic abuse assault: count I, domestic abuse assault by knowingly impeding the normal breathing or circulation of blood causing bodily injury, in violation of Iowa Code section 708.2A(5) (2015); count II, domestic abuse assault by use or display of a dangerous weapon, in violation of section 708.2A(2)(c); and count III, domestic abuse assault causing bodily injury, in violation of section 708.2A(2)(b). Count II was dismissed, and a jury found Young guilty of the crimes alleged in counts I and III. He was sentenced to a term of imprisonment and ordered to pay a fine, restitution, and court costs. On appeal, he contends the district court erred in denying his motion for new trial, alleging the verdict concerning the domestic abuse assault by strangulation charge was not supported by the weight of the evidence. He also asserts the district court entered an illegal sentence in taxing court costs associated with the dismissed charge. We affirm.

**I. Background facts.** Young suggested to his wife of three years that they have "a threesome." When she said she did not want to, Young became upset, and he commanded his wife to go to their bedroom. He started to take his belt off and asked his wife if she wanted it across the face or buttocks. She started crying and said, "Please don't do this," but realizing she was going to get struck with the belt anyway, she chose the buttocks.

Young told his wife to get naked and lay flat on the bed. She complied but kept on crying and telling Young, "Please don't do this." Young hit his wife twice on the buttocks with the belt, causing her pain and leaving red welts on her body. Young told his wife to get up off the bed and asked her how it felt. When she told

him it hurt and stung a little, Young said, "That's it?" Then he told her to lie down because she was "getting two more" before striking her with the belt two more times.

Young left the home for about a half hour. When he returned, Young and his wife had sex. The next day, Young's wife called the Iowa Coalition Against Domestic Violence, an organization she used to work for. She was given the number for Children & Families of Iowa and was told to call the police. That afternoon she left work early and went to the courthouse because she "needed to get help." She requested and obtained a no-contact order, saying she "had enough" and "wanted to get [Young] out." The police were called, and an officer was sent to the courthouse.

A City of Des Moines police officer interviewed Young's wife at the courthouse. She appeared to the officer to be distraught, nervous, and scared. He testified, "She gave me every indication that she was reluctant to be [at the courthouse] and something had happened to her." She told the officer she had been the victim of an assault where her husband had placed his hands around her throat causing squeezing that had made it difficult for her to breathe and left her coughing and gagging. She also told the officer about being struck by the belt. The officer observed marks on Young's wife's body that appeared to be consistent with the description of the assault. Photographs of the marks were taken by police identification technicians. The photographs depict red marks on Young's wife's back and a mark on the left side of her neck.

At trial, Young's wife testified that Young had struck her with a belt but denied he had strangled her. She professed her love for her husband and

testified the injury to her neck was a hickey Young gave her during their post-assault lovemaking. She admitted making the statements the police officer testified to. She claimed she lied to the officer because she "was mad." She testified that she wanted Young

> to feel the pain that I felt that he made me feel that night. And I wanted—I wanted him to get the maximum punishment because he made me hurt. He made me feel so small. He made me feel like a dog. And I just made the story bigger than what it was.

Later, after charges were filed against Young, Young's wife met with the prosecutor and talked with him on the phone a few times, stating she had lied about the strangulation and wanted the charges dropped. She did not want to see Young go to jail, claiming he just needed help. She also wrote a letter to the judge claiming she had lied to the police officer. A month after the assault, Young's wife cancelled the no-contact order.

**II. Motion for new trial.** In light of Young's wife's recantation at trial about the strangulation, Young asserts the jury's finding of guilt with regard to the charge of domestic abuse assault by knowingly impeding the normal breathing or circulation of blood causing bodily injury is contrary to the weight of evidence and the trial court therefore erred in denying his motion for new trial. We review the district court's refusal to grant a new trial on a weight-of-the-evidence claim for an abuse of discretion. *See State v. Reeves*, 670 N.W.2d 199, 202 (Iowa 2003). We do not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* A verdict is contrary to the weight of the evidence where "a greater amount of credible evidence supports one side of an

issue or cause than the other." *State v. Ellis*, 578 N.W.2d 655, 658 (Iowa 1998) (quoting *Tibbs v. Florida*, 457 U.S. 31, 38 (1982)).

> [T]he district court has considerable discretion when determining a motion for new trial under the weight-of-the-evidence test. Except in the extraordinary case where the evidence preponderates heavily against the verdict, trial courts should not lessen the jury's role as the primary trier of facts and invoke their power to grant a new trial. A trial court should not disturb the jury's findings where the evidence they considered is nearly balanced or is such that different minds could fairly arrive at different conclusions.

*State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006).

In reaching its verdict, the jury made its own determination of whether Young's wife's testimony was credible. *See State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). "The jury [was] free to believe or disbelieve any testimony as it [chose] and to give weight to the evidence as in its judgment such evidence should receive." *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993). "The very function of the jury is to sort out the evidence presented and place credibility where it belongs." *State v. Blair*, 347 N.W.2d 416, 420 (Iowa 1984); *see also State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) ("It is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury."). "The one exception . . . is that 'the testimony of a witness may be so impossible and absurd and self-contradictory that it should be deemed a nullity by the court.'" *State v. Lopez*, 633 N.W.2d 774, 785 (Iowa 2001) (citations omitted).

At a posttrial hearing considering Young's motion for new trial, the district court concluded:

> [T]here is proof beyond a reasonable doubt and that the jury verdict is not contrary to the weight of the evidence. As I indicated earlier, I do believe that a reasonable jury could find that in fact the defendant strangled or choked the victim, and there was both testimonial evidence to that effect and exhibits to that effect.
>
> My recollection is that there were photographs regarding that very issue. And consequently, I do think that the jury could find, as they did, that there was choking and strangulation here and that the State met its burden of proof of beyond a reasonable doubt.

In its written ruling denying Young's motion for new trial, the district court concluded, "Testimonial and documentary evidence submitted at trial could establish beyond reasonable doubt that Mr. Young strangled and choked his wife . . . if the jury chose to believe this evidence. The jury so chose."

Victims often recant in domestic violence cases. *See Irving v. Emp't Appeal Bd.*, 883 N.W.2d 179, 216 (Iowa 2016) (Waterman, J., concurring in part, dissenting in part) (citing *State v. Smith*, 876 N.W.2d 180, 187-88 (Iowa 2016)). In fact, the rate of recantation among domestic violence victims has been estimated between eighty and ninety percent. *See Smith*, 876 N.W.2d at 194 (Waterman, J., dissenting) (citing Douglas E. Beloof & Joel Shapiro, *Let the Truth Be Told: Proposed Hearsay Exceptions to Admit Domestic Violence Victims' Out of Court Statements as Substantive Evidence*, 11 Colum. J. Gender & L. 1, 3–4 (2002)).

The jury was free to disbelieve Young's wife's recantation and to believe the statements she made to the investigating officer some hours after the crime occurred. That evidence was corroborated by the physical evidence—the photographs of the marks on Young's wife's neck. We conclude, like the trial court, that the greater weight of the evidence supports the jury's verdict. *See State v. Tharp*, 372 N.W.2d 280, 282 (Iowa Ct. App. 1985) (affirming trial court's

denial of motion for new trial based, in part, on its determination the victim's recantation was not credible). This is not that extraordinary case where the evidence preponderates heavily against the verdict. Thus, the district court did not abuse its discretion in denying Young's motion for new trial. We therefore affirm his convictions.

      **III. Court costs.** Count II was dismissed, and the jury found Young guilty of counts I and III. Relative to the court-costs issue on appeal, the sentencing form order provided:

> **DISMISSAL OF OTHER COUNTS AND CASES.** Upon the recommendation of the State, the following counts/cases are dismissed: COUNT II WAS DISMISSED BY THE COURT AT THE CLOSE OF THE STATE'S CASE.
>     [Young] is ordered to pay Court costs on these counts/cases.

Young contends the district "court's order that [Young] be assessed all costs of the action rather than only the costs associated with the counts which [Young] was convicted amounted to a statutorily unauthorized, and therefore illegal, sentence."[1] He asks that the portion of the sentencing order taxing costs to him be vacated and remanded for the entry of a corrected order. Citing *State v. Petrie*, 478 N.W.2d 620, 622 (Iowa 1991), Young asserts the costs associated

---

[1] This is another appeal in the long line of appeals spawned by the *Petrie* decision. Some twenty-four recent court-costs-associated-with-dismissed-charges cases filed by this court were listed in *State v. Johnson*, 887 N.W.2d 178, 180-81 n.1 (Iowa Ct. App. 2016). And the cases keep coming. Since *Johnson* was filed on September 14, 2016, this court has filed an additional five opinions dealing with this issue: *State v. Smith*, No. 15-2194, 2017 WL 108309, at *5 (Iowa Ct. App. Jan. 11, 2017); *State v. Hursey*, No. 16-0187, 2016 WL 6270000, at *4 (Iowa Ct. App. Nov. 26, 2016); *State v. Kemmerling*, No. 16-0221, 2016 WL 5933408, at *1-2 (Iowa Ct. App. Nov. 12, 2016); *State v. Trombone*, No. 15-1696, 2016 WL 5484893, at *5-6 (Iowa Ct. App. Sept. 28, 2016); *State v. Patrick*, No. 15-0268, 2016 WL 5485065, at *1-2 (Iowa Ct. App. Sept. 28, 2016).

with his prosecution should be proportionate, i.e., that he should be assessed with two-thirds of the costs because he was convicted of two of three charges.

The State agrees the district court exceeded its authority by assessing court costs for the dismissed count. But the State correctly notes that the court costs may be the same whether or not count II was charged. *See Johnson*, 887 N.W.2d at 182; *see also, e.g.*, *Commonwealth v. Soudani*, 165 A.2d 709, 711 ("We fail to perceive how the costs of prosecution in the instant case may be divided or apportioned between the first and second counts of the indictment."). The State suggests, "On remand, the record needs to be analyzed to determine if any of the assessed costs were clearly attributable or discrete to the dismissed count, and only those costs need to be removed from the assessment."

In a case such at this—where Young was charged in one multi-count trial information, was found guilty of two charges, and had one dismissed—there are three categories of costs under *Petrie*:

> (1) those clearly attributable to the charges on which the defendant is convicted, (2) those clearly attributable to dismissed charges, and (3) those not clearly associated with any single charge. A defendant may be assessed costs clearly attributable to the charges on which the defendant is convicted but may not be assessed costs clearly attributable to dismissed charges. "Fees and costs not clearly associated with any single charge should be assessed proportionally against the defendant."

*Johnson*, 887 N.W.2d at 181-82 (internal citations omitted) (quoting *Petrie*, 478 N.W.2d at 622).[2]

---

[2] A panel of this court recently pointed out that, "[a]lthough the assessment of costs for dismissed charges violates *Petrie*, it does not appear to violate the relevant statute [Iowa Code § 910.2]." *Smith*, 2017 WL 108309, at *4. Furthermore, "[t]here is nothing in the statutes that requires or even allows the district court to allocate the costs as *Petrie* requires. To the contrary, the district court can assess costs for the entire "case" where

The fact that count II was dismissed does not automatically establish that a part of Young's assessed court costs are clearly attributable to the dismissed count. Here, the record shows just the opposite. The docket report before us—dated January 25, 2016, and prepared three days after Young filed his notice of appeal—shows a total of $600 in court costs and $316 in other costs accrued as of that date.[3] These costs would have been the same even had the State not charged Young with the later dismissed count II. Young makes no allegation to the contrary. We conclude the total assessed court costs are clearly attributable to the counts for which Young was found guilty and, therefore, fully assessable to him. Additionally, it is telling that Young does not even claim he was over-assessed court costs. *See id.* at 182. In this illegal sentence claim, it is up to Young to establish an over-assessment of court costs. *See id.* He has failed to do so.

Nevertheless, Young asserts the costs associated with his prosecution should be proportionate, i.e., that he should be assessed with two-thirds of the costs. *See Petrie*, 478 N.W.2d at 622 ("Since the defendant was only convicted on one of three counts he should be required to pay only one-third of these costs."). Young misreads *Petrie*. In *Petrie*, it is clear fees and costs were incurred relative to the dismissed charges. *Id.* Apparently—although it is not clear from the opinion—there were fees and costs incurred that were not clearly

---

there is a multi-count trial information so long as there was a "judgment of conviction . . . rendered" on any count in the trial information." *Id.* (quoting Iowa Code § 910.2).

[3] "Court costs" consists of: $100 filing fee, $120 court reporting fee (trial), $40 court reporting fee (hearing to cancel no-contact order), $40 court reporting fee (preliminary hearing), $100 domestic/sexual abuse, $100 domestic/sexual abuse, and $100 jury fees. The $316 in "other" costs is for jury/witness reimbursement.

associated with any particular charge, and it was those fees and costs that were to be assessed proportionally, i.e., at one-third, since Petrie pled guilty to one of three charges. *See id.* ("Fees and costs not clearly associated with any single charge should be assessed proportionally against the defendant."). Here Young does not dispute that all the assessed costs are clearly attributable to the counts for which he was found guilty. The *Petrie* court makes no suggestion that the court costs clearly attributable to the charge to which Petrie pled guilty should be apportioned. We conclude there are no costs subject to a *Petrie* apportionment because there is no showing of any costs not clearly associated with any charge.

A remand for a corrected sentencing order is not warranted because Young has failed to show he was over-assessed and he failed to show he was taxed for costs not clearly associated with any charge. A remand for a corrected sentencing order would only exalt form over substance because a corrected order will not change Young's obligation one iota.

**AFFIRMED.**