# IN THE COURT OF APPEALS OF IOWA

No. 21-1931
Filed February 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**STEVEN ALAN VOGEL,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Poweshiek County, Shawn R.

Showers, Judge.


        Steven Vogel appeals his convictions for murder in the first degree and

abuse of a corpse. **AFFIRMED.**


        Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant

Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Richard J. Bennett, Assistant Attorney

General, for appellee.


        Heard by Greer, P.J., Chicchelly, J., and Danilson, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**DANILSON, Senior Judge.**

Steven Vogel appeals his convictions for murder in the first degree and abuse of a corpse, challenging the sufficiency of the evidence to support the jury's findings of guilt on both counts. Vogel contends the evidence, at most, supports a conviction for involuntary manslaughter. Upon our review, we affirm.

## I. *Background Facts and Proceedings*

From the evidence presented at trial, the jury could have found the following. In September 2020, Steven Vogel lived with his mother, Julia Cox, and her boyfriend, Roy Garner, in the basement of their home in Grinnell. Vogel associated with and consumed drugs with a group of people, including Cody Johnson and Nathaniel Haines. Michael Williams was also part of this drug-using community. Vogel's girlfriend, Crystal Cavegn, was in a drug rehabilitation program around that time.

On September 12, Rochelle Pagan missed a call from her cousin, Williams, because she was just arriving to work. Williams then texted Pagan and said he would call her back later, but he never did.

The next morning, Vogel showed up at Johnson's house and asked Johnson for a ride home. When they arrived to Vogel's house, Vogel asked Johnson if he wanted "to meet Michael." Johnson, who had never been to Vogel's house before, agreed to go inside, and he followed Vogel downstairs to his room in the basement. On the floor, Johnson saw Williams' body wrapped in "some kind of foam" and plastic wrap; "[h]is face was still uncovered, and his legs were still uncovered." Vogel told Johnson he had "clubbed" Williams over "something to do with his girlfriend [Cavegn]." Johnson watched as Vogel wrapped the rest of

Williams' body with plastic wrap, and then he helped Vogel drag the body "underneath his futon bed." Johnson was scared if he didn't help then Vogel would "hurt" him.

Later that day, after using drugs at Johnson's home, Haines also accompanied Vogel to his house because Vogel "ha[d] a problem" and needed "help with something." Vogel microwaved Haines some food, and then they went downstairs to the basement. Haines noticed the room was clean, which was "[n]ot really" normal. Vogel lifted up an air mattress to show Haines "something big wrapped in plastic," and said, "I killed Michael Williams." Vogel said he and Williams "got in an argument" because Williams had "kidnapped" Cavegn "out of rehab." Vogel told Haines he hit Williams "in the back of the head with something," "wrestled with him on the ground," and "put a rope around his neck"; then he put "the rope over his rafters and pulled on it until [Williams] stopped moving." Haines "didn't want to believe it," so to change the subject, he suggested they consume drugs together. Haines later fell asleep, and when he woke up, Vogel was sleeping, so Haines felt it was "safe" to leave and left the residence.

Vogel later asked for Haines' help "[m]oving the body"; Haines said, "sure," but did not intend to help. Vogel again asked Haines for help moving the body a few days later; "[h]e wanted to move it from the basement and try to get rid of it but had no vehicle." Again, Haines did not provide Vogel any assistance. Haines later explained he did not call the police or offer information right away because he had a criminal history and was "on the run" for a recent possession charge.

At some point, Johnson tentatively agreed to help Vogel move Williams' body. But when they got to the basement, Johnson changed his mind and told

Vogel he couldn't "do this anymore" and left. Johnson later explained he did not tell police about what had happened because he was scared of Vogel and "in shock."

On September 16, Vogel showed up unexpectedly, along with Cox and Garner, to his sister's house in Marshalltown to ask if he "could stay [with her] for a couple of days." Although Vogel and his sister did not get along and "barely talked," she agreed to let him stay. Before Cox and Garner left in Garner's pickup truck, Vogel asked to take a family photograph, stating "it would be the last time we took a family photograph together," which his sister thought was odd. Vogel told his sister that "he thought he killed someone."

That same day, Jolene Brady was traveling home from Newton on a gravel road, when she observed two pickup trucks traveling toward her. One of the trucks was "stopped in the middle of the bridge" over a creek, "just creeping along" until it noticed Brady and "moved quickly" to its correct lane. The truck was "a dark color"; it was "piled high" with "totes, boxes," "a mattress and a bike," and a tarp partially covering the items inside. There were two individuals with face coverings in the truck, whom Brady believed were males. The second truck also had two individuals, and Brady was able to identify the driver as Garner. She did not see any fire or smoke coming from the ditch.

Destiny Anderson traveled on the same gravel road shortly after Brady. Anderson saw smoke coming from the area near the bridge. She stopped her vehicle to view the source of the smoke and saw "what [she] thought to be a human" burning in the ditch. Anderson called her mother, who also came to inspect the fire, and "recognized hands and decided it was a body." The witnesses

contacted law enforcement, and an investigation confirmed the body found in the ditch was that of Williams and a liquid accelerant had been used to start the fire. Pieces of rope were found near Williams' body. A subsequent autopsy determined Williams sustained injuries to his head caused by blunt force trauma and injuries to his neck consistent with use of a ligature. The associate state medical examiner concluded Williams' cause of death was consistent with strangulation.

Later that evening, Chris Lewis called police to report a "trash dump" in rural Tama County. Lewis provided a license plate number and description of the pickup truck, and police determined it was registered to Garner. Lewis later identified the person he saw in the back of the truck dumping trash as Garner. The discarded trash included a black garbage bag, carpet, household items, empty containers for cleaning products of bleach and Comet, and clothing linked to Vogel. A wooden baseball bat, an empty gasoline can, pieces of foam, and rope were later recovered during a search of Garner's truck. Another baseball bat and more rope were discovered at Vogel's house.

The State charged Vogel with murder in the first degree and abuse of a corpse. *See* Iowa Code §§ 707.1, 707.2(1)(a), 708.14(1)(a) (2020). The case proceeded to a jury trial. Vogel did not testify. The jury found Vogel guilty on both counts, and the district court entered judgment and sentence. Vogel appeals.

## II. Standard of Review

We review the sufficiency of the evidence for correction of errors at law. *See State v. Lacey*, 968 N.W.2d 792, 800 (Iowa 2021). "Under this standard, the court is highly deferential to the jury's verdict. We will affirm the jury's verdict when the verdict is supported by substantial evidence." *Id.* Evidence is substantial if it

may convince a rational person of the defendant's guilt beyond a reasonable doubt. *Id.* In making this determination, we view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the State. *Id.* The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *Id.*

### III. Sufficiency of the Evidence

#### A. First-Degree Murder

The jury was instructed the State had to prove the following elements of first-degree murder:

> 1. On or about September 12, 2020, the defendant strangled Michael Williams.
> 2. Michael Williams died as a result of being strangled.
> 3. The defendant acted with malice aforethought.
> 4. The defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill Michael Williams.

Vogel contends there is insufficient evidence to sustain his conviction. Specifically, he argues no evidence established "the nature" of his relationship with Williams, how Williams "came to be" at his house, why he "believed Williams had taken Cavegn from rehab," or any planning of the act. Accordingly, he contends there was insufficient evidence to prove he acted with premeditation and deliberation.

The jury was instructed, "Deliberation and premeditation need not exist for any particular length of time before the act." And the jury was further instructed: "If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation and specific intent to kill." Here, no

matter the reason Williams was in Vogel's basement, at some point, Vogel became "mad" about Williams' so-called interaction with his girlfriend and he "clubbed" Williams in the head. Vogel then wrapped a rope around Williams' neck and threw the end of the rope over the basement rafters while Williams "was saying, 'Please stop doing this.'" *See State v. Blair*, 347 N.W.2d 416, 419, 421 (Iowa 1984) (observing the victim "was found . . . with his hands and feet bound with nylon hose," which made it "difficult to conceive that the killing was anything other than deliberate and premeditated"). Vogel's continued application of pressure over a period of time "until . . . Williams stopped moving" was sufficient for the jury to find Williams' death was premeditated. *See State v. Scott*, 21 P.3d 516, 522 (Kan. 2001) (noting "death by strangulation can be strong evidence of premeditation" and citing cases); *see also State v. Buenaventura*, 660 N.W.2d 38, 48 (Iowa 2003) ("Premeditation may be shown through evidence of (1) activity by the defendant to plan the killing, (2) motive based on the relationship between the defendant and the victim, or (3) the nature of the killing, including the use of a deadly weapon combined with an opportunity to deliberate.").

Vogel's conduct after the killing also supports the jury's finding of premeditation and deliberation. *Buenaventura*, 660 N.W.2d at 49 (noting "[p]remeditation was also shown by the nature of the crime and the defendant's actions afterwards"). Vogel wrapped Williams' body in foam and plastic wrap and kept the body in his basement for days while he enlisted several people to assist him in disposing of it. Vogel acknowledged killing Williams and cleaned to hide evidence of the murder. Williams' body was later dumped in a ditch and burned.

The evidence presented supports the jury's finding of premeditation and deliberation in this case.

Vogel also contends there was insufficient evidence to prove he acted with malice aforethought.  "Malice aforethought" was defined to the jury as "a fixed purpose or design to do some physical harm to another which exists before the act is committed.  It does not have to exist for any particular length of time."  The jury was further instructed, "Malice aforethought may be inferred from the Defendant's use of a dangerous weapon."  A "dangerous weapon" was defined to the jury as

> any device or instrument designed primarily for use in inflicting death or injury, and when used in its designed manner is capable of inflicting death.  It is also any sort of instrument or device actually used in such a way as to indicate the user intended to inflict death or serious injury, and when so used is capable of inflicting death.

According to Vogel, because "no object was ever identified as having been used in the strangulation," the evidence is insufficient to conclude a dangerous weapon was used.  His contention is unpersuasive.  As noted, Vogel told Haines he "put a rope around [Williams'] neck" and then put "the rope over his rafters and pulled on it until [Williams] stopped moving."  The state medical examiner testified regarding injuries to Williams' neck indicative of a ligature furrow, and she opined Williams' cause of death was consistent with strangulation.  Officers found rope in Vogel's home and Garner's truck, and rope "fragments" "near [Williams'] body or almost under it to the side."  Although a rope is not a dangerous weapon per se, the evidence presented supported a finding that Vogel used a rope "in such a way as to indicate [he] intended to inflict death or serious injury," and indeed, Vogel's use of the rope caused Williams' death.  *See, e.g.*, *State v. Calhoun*, 34 N.W. 194, 196 (Iowa 1887) (holding "[t]he instructions correctly submitted to the jury the

question whether the cord used by defendant was a dangerous weapon" noting, "[a] cord is often used as an instrument by [defendants] to kill or disable their victim; when so used it is properly called a weapon"); *Buenaventura*, 660 N.W.2d at 50 (holding "[c]learly, the weapon used, though unidentified and never found, was deadly" and the manner in which it was used supported a finding of "a fixed purpose or design to do physical harm"). Substantial evidence supports the jury's finding of malice aforethought in this case. Upon our review of the evidence, viewed in the light most favorable to the State, we are convinced that a rational factfinder could have found Vogel guilty of first-degree murder beyond a reasonable doubt.

*B. Abuse of a Corpse*

The jury was instructed the State had to prove the following elements of abuse of a corpse:

> 1. On or about September 16, 2020, the defendant mutilated, disfigured, or dismembered the human corpse of Michael Williams.
> 2. The defendant intended to conceal a crime.

Vogel contends there is insufficient evidence to sustain his conviction because there was no proof he "participated in th[e] act" of burning Williams' body and aiding and abetting was not presented as a theory in his case. The State counters that sufficient circumstantial evidence was presented to prove Vogel's involvement in the crime. We agree.

There was substantial evidence that in the days after Williams' death, Vogel expressed to Johnson and Haines that he needed "help" with a "problem." Vogel had Williams' body wrapped up in the basement of his residence, and he recruited Johnson and Haines to help him "move [the body] from the basement and try to

get rid of it" because Vogel "had no vehicle." The body was found in a ditch burning approximately four days after Williams was killed. Garner, who resided with Vogel, was identified as being in his pickup near the scene, scoping out the area where Williams' body was found burning shortly thereafter. Vogel was with Garner sometime the same afternoon in Garner's pickup at Vogel's sister's house in Marshalltown. Witnesses observed Garner's truck containing various items, including a bike, a tarp, and storage totes, while it was near the burn site. Some of these same items were observed in Garner's truck in Marshalltown. And Garner was later seen dumping trash, including cleaning products and clothing of Vogel's in Tama County. An empty gas can was also later located in the truck by law enforcement. The jury could infer from the circumstantial evidence that Vogel was involved in the disposal and burning of Williams' body because he caused Williams' death, Vogel was the one who wanted to get rid of the body including seeking assistance to move the body, and Garner's truck was the means to his end. Further, Vogel is the individual who left the community and vicinity where the body was dumped and burned.

"Juries must necessarily make inferences when finding facts based on circumstantial evidence." *State v. Ernst*, 954 N.W.2d 50, 59 (Iowa 2021). Considering all of the evidence in the light most favorable to the jury's verdict, including reasonable inferences to be drawn from it, we conclude Vogel's conviction for abuse of a corpse is supported by substantial evidence.

*IV.*     ***Conclusion***

Upon our review, we affirm Vogel's judgment and sentence for murder in the first degree and abuse of a corpse.

**AFFIRMED.**