## IN THE COURT OF APPEALS OF IOWA

No. 23-1515
Filed February 19, 2025

**TRAN LEE WALKER,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

    Appeal from the Iowa District Court for Woodbury County, James N. Daane,

Judge.


    A postconviction-relief applicant appeals the district court's order dismissing

his application.  **AFFIRMED.**


    Jessica Donels of Parrish Kruidenier L.L.P., Des Moines, for appellant.

    Brenna Bird, Attorney General, and Sheryl Soich, Assistant Attorney

General, for appellee State.


    Considered by Greer, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

Following a bench trial, Tran Walker was convicted of two counts of first-degree murder for the 2018 stabbing deaths of his ex-girlfriend and friend. On direct appeal from his convictions, our court described the slayings and events leading to them as follows:

> Tran Walker stabbed Paiten Sullivan forty-three times and Felipe Negron Jr. seventeen times. Both victims bled out and died as a result of their multiple stab wounds. Walker was charged with two counts of first-degree murder. . . .
>
> In the months before the murders, eighteen-year-old Walker dated seventeen-year-old Sullivan. They were involved in an on-again/off-again relationship. They broke up in January 2018. Walker was hurt. He took the breakup badly and wanted closure. In late January, seventeen-year-old Negron, a friend of Walker's, told Walker [that] Sullivan wanted to meet so they could talk. Negron and Sullivan picked Walker up. Negron drove while Walker and Sullivan sat in the back. The three drove to a local Wal-Mart and parked in the parking lot. Walker and Sullivan discussed their relationship, and at some point, Sullivan told Walker she did not love him anymore. Walker later told detectives "Like, I wasn't angry. I didn't feel anything about it, I was just like, okay." The three left the parking lot to take Sullivan home, and they continued to engage in a casual conversation.
>
> Once the trio neared a bar . . . , Walker took out his knife and started stabbing both Sullivan and Negron. Walker claimed he could not remember whom he stabbed first. Negron stopped the car and tried to intervene, but Walker stabbed him. Walker stabbed Sullivan at least forty-three times and stabbed Negron seventeen times.

*State v. Walker*, No. 19-1620, 2021 WL 210732, at *1 (Iowa Ct. App. Jan. 21, 2021).

Walker filed an application for postconviction relief (PCR) alleging several ways his trial counsel was ineffective. About nine months into the case, the State filed a motion to dismiss. After Walker's counsel clarified that he intended to pursue only the grounds for relief stated in his application, the State withdrew its motion. About three months later, the State filed a motion seeking summary

disposition pursuant to Iowa Code section 822.6 (2022), which was supported by an affidavit from Walker's criminal trial counsel and a forensic psychologist's report. Walker resisted the motion. The resistance was supported by an affidavit from Walker. Without a hearing, the district court granted the motion and dismissed Walker's application.

Walker appeals. Although other issues were addressed in the district court's ruling, Walker's challenges on appeal are limited to arguing: (1) he was entitled to a hearing; (2) he generated a material factual dispute on his claim that his criminal trial counsel was ineffective for failing to assert insanity and diminished-responsibility defenses; and (3) he generated a material factual dispute on his claim that his criminal trial counsel was ineffective for failing to present evidence that he was not the one who arranged the meeting with the victims.

## I.     Standard of Review

When the district court summarily disposes of a PCR case under section 822.6, we apply summary judgment standards on appeal. *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). Those standards recognize that summary disposition is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law.

*Id.* (quoting Iowa R. Civ. P. 1.981(3)). As the moving party, the State bears the burden to show the absence of a genuine issue of material fact. *See id.* We are required to view the record in the light most favorable to the nonmoving party and draw all legitimate inferences from the record in the nonmoving party's favor. *Id.*

## II.     Lack of a Hearing

As to Walker's claim that the district court erred in not granting him a hearing, it is not clear from his briefs whether he is referring to a hearing on the State's motion for summary disposition or a hearing on the merits of his PCR application.  Either way, his claim fails.

As to a hearing on the State's motion, once a PCR applicant has been given proper notice and opportunity to resist, the district court may grant a motion for summary disposition after a hearing or nonoral submission.  *See Poole v. State*, No. 21-0386, 2021 WL 5919044, at *1 (Iowa Ct. App. Dec. 15, 2021) (citing applicable rules of civil procedure on summary judgment).  Here, there is no question Walker had notice and the opportunity to resist the State's motion, and he did so.  As such, nothing prevented the district court from reviewing the State's motion and Walker's resistance and then ruling on the motion without a hearing— no error occurred by the district court doing so.  *See id.*

As to Walker being entitled to a hearing on the merits of his PCR application, the purpose of section 822.6 is to permit summary disposition of PCR actions without a trial on the merits when appropriate.  So, if the district court appropriately granted the State's motion for summary dismissal of Walker's PCR application—a question we resolve in the forthcoming sections of this opinion—Walker was not entitled to a trial on the merits of the application and no error occurred in not holding a PCR trial.

We reject Walker's claim of error based on the failure to grant him a hearing and proceed to the merits of the district court's summary-disposition ruling.

### III.     Ineffective-Assistance of Counsel Standards

We start with the standards governing Walker's claims.  Walker's PCR application is based on claims of ineffective assistance of his criminal trial counsel. The United States and Iowa Constitutions guarantee a criminal defendant the right to effective assistance of counsel.  *State v. Kuhse*, 937 N.W.2d 622, 628 (Iowa 2020).  To prevail on his claims of ineffective assistance of counsel, Walker must prove (1) by a preponderance of the evidence that his counsel failed to perform an essential duty, and (2) prejudice resulted.  *See State v. Boothby*, 951 N.W.2d 859, 863 (Iowa 2020).

To prove the first prong, Walker must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Kuhse*, 937 N.W.2d at 628 (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  Counsel is presumed competent, and Walker must successfully rebut that presumption by showing his counsel's performance was not reasonable under prevailing professional norms.  *See Boothby*, 951 N.W.2d at 863.

To prove the second prong, Walker must establish a reasonable probability that, but for his attorney's unprofessional errors, the result of his trial would have been different.  *See id.*  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Kuhse*, 937 N.W.2d at 628 (quoting *Strickland*, 466 U.S. at 694).  And Walker's obligation to establish a different result means he must show the fact finder would have had reasonable doubt as to his guilt absent counsel's errors.  *See Boothby*, 951 N.W.2d at 863.

As the moving party, the State bears the burden of establishing there is no genuine issue of material fact. *See Moon*, 911 N.W.2d at 142. In the context of a PCR case, this means the State must establish that no rational fact finder could conclude that Walker has met his burden of proving an ineffective-assistance-of-counsel claim after both sides have had the opportunity to fully develop their claims. *See Linn v. State*, 929 N.W.2d 717, 730 (Iowa 2019).

**IV.     Failure to Assert Insanity and Diminished-Responsibility Defenses**

Walker contends his criminal trial counsel failed to (1) introduce evidence of his mental-health treatment, medication, or diagnosis, and (2) obtain professional opinions or mental-health files concerning his conditions. He contends this failure constituted ineffective assistance of counsel, as it precluded him from asserting insanity and diminished-responsibility defenses.

Both of Walker's claims are directly contradicted by the record. Walker's criminal trial counsel was a seasoned public defender who had tried numerous felony cases, including murders. Her affidavit reveals that, upon meeting with Walker shortly after being appointed to represent him, she became aware that Walker suffered from mental illness. She also knew insanity and diminished-responsibility defenses could be raised on Walker's charges. So, she had Walker evaluated by a "well-established forensic psychologist." Following "a comprehensive forensic psychological evaluation" of Walker, the board-certified psychologist submitted a report to Walker's counsel summarizing the evaluation, which included these details:

> Consistent with the standard of practice in the field of forensic psychological assessment, I relied on multiple sources of information in performing this evaluation. I interviewed Mr. Walker at the

Woodbury County Jail on three separate days. I saw him for a total of approximately twelve hours.

During that time, I obtained a detailed history from him, information about his relationship with both victims, and I discussed his recollections regarding the crimes with which he has been charged. I administered a range of psychological tests to him, instruments commonly used in the field of forensic psychology. These instruments focused on his intellectual and cognitive functioning, issues related to possible neurological damage, his personality functioning, and any attempts on his part to exaggerate or malinger.

I was provided with records related to his prior psychiatric hospitalization and treatment (both in and out-patient), Minutes of proposed testimony of others if they were to testify, police reports, a DVD of his interrogation, and extensive printouts from his Facebook account. I also interviewed Mr. Walker's mother and older brother as part of this evaluation.

Initially, based on his report of events leading up to and including the instant offenses and his prior mental health records, it appeared that an insanity defense or a defense addressing diminished capacity might be possible. However, as we discussed, during my last interview with him and based on my recent review of his communications on Facebook, I have ruled out a defense based on his mental state at the time of the crime.

The forensic psychologist went on to explain why he ruled out those defenses. Based on the forensic psychologist's report, Walker's counsel determined she should not raise a psychological defense because it had no merit.

Walker countered this information from the State with his own affidavit in support of his resistance to the State's motion for summary disposition. In that affidavit, Walker tries to undermine the forensic psychologist's report by arguing (1) the psychologist's method of evaluating him was not sufficient because his state of mind "comes and goes in waves" and the psychologist did not spend enough time with him; (2) the psychologist highlighted details out of context; (3) the psychologist repeatedly interrupted him and did not allow him to fully talk; and (4) the psychologist included unnecessary information in his report. Walker

contends these details in his affidavit generate a genuine issue of material fact as to whether his trial counsel was ineffective in relying on the forensic psychologist's report as a basis for not asserting insanity or diminished-responsibility defenses.

At the outset, we question whether the facts asserted in Walker's affidavit generate a genuine issue of material fact on the question of whether his trial counsel failed to perform an essential duty by relying on the psychologist's report. Further, Walker's affidavit does not allege he told his trial counsel of the deficiencies claimed in his affidavit at the time trial counsel had to make a decision on asserting psychological defenses. But even if we assume Walker communicated the deficiencies and a competent defense counsel would have refused to rely on the psychologist's report as a result, there is still a fatal flaw in Walker's claim. Walker presented no evidence by affidavit or otherwise in resistance to the State's motion for summary disposition that some other competent expert would give the opinion that Walker met the legal standards supporting an insanity or diminished-responsibility defense. Without that evidence, Walker is in the exact same position now that he was in when his criminal trial occurred. That is, he had no expert that would give the opinion that he was legally insane or had diminished responsibility at the time he killed the two victims.[1]

---

[1] We note that Walker makes no claim that he was not given sufficient time to locate an expert to opine on his mental state at the time of the killings. As such, Walker had the obligation to present some evidence to generate a fact question that would defeat the State's motion for summary disposition. *See Slaughter v. Des Moines Univ. Coll. of Osteopathic Med.*, 925 N.W.2d 793, 808 (Iowa 2019) (requiring a party resisting summary judgment to present the evidence needed to generate a fact dispute as summary judgment is the "put up or shut up moment in a lawsuit" (citation omitted)). This he failed to do.

As such, had the PCR case proceeded to a trial on the merits, there is no factual dispute that would permit the district court to conclude that Walker's criminal trial counsel breached any duty by failing to assert insanity or diminished-responsibility defenses with no expert or that Walker was prejudiced as a result. *See Lamaster v. State*, 821 N.W.2d 856, 867 (Iowa 2012) (rejecting claim of ineffective assistance of counsel for failing to present insanity or diminished-responsibility defenses when "[t]o this day, [the PCR applicant] has no expert opinion that he was legally insane at the time of the killing"); *Anfinson v. State*, 758 N.W.2d 496, 502 (Iowa 2008) (rejecting claim of ineffective assistance of counsel for failing to present insanity or diminished-responsibility defenses when "[e]ven the mental health expert retained by [the PCR applicant] in connection with this postconviction action did not opine [the PCR applicant] was insane at the time of the child's death").

We conclude the district court correctly determined that Walker failed to present a question of material fact regarding his ineffective-assistance claim based on counsel's failure to pursue insanity or diminished-responsibility defenses.

## V.    Evidence of Who Scheduled the Meeting

For his final claim, Walker contends his criminal trial counsel provided ineffective assistance of counsel by failing to "put on the exculpatory evidence that the meeting on [the day of the killings] was set up by Negron, rather than Walker." He contends this evidence would have negated the finding of premeditation.

We find Walker has failed to generate a genuine issue of material fact on this issue on both the breach-of-duty and prejudice prongs of his claim. As a starting point, the evidence Walker contends was not presented was, in fact,

presented. At trial, the State introduced into evidence text messages between Negron and Walker. That text conversation starts with Negron telling Walker that Sullivan wanted to meet. Walker responded that he was willing to meet, and the meeting was then scheduled. Given this evidence establishing that Walker was not the one who initiated the meeting, we fail to see what additional evidence Walker expected his trial counsel to present on this topic, and Walker doesn't present any. This evidence alone establishes that Walker has failed to generate a genuine issue of material fact on his claim of ineffective assistance of counsel.

But even if we assumed Walker's counsel should have put on additional or other evidence of Walker not being the one to set up the meeting, Walker cannot show prejudice. Evidence of planning activity directed toward the killing is just one form of circumstantial evidence of deliberation and premeditation. *State v. Blair*, 347 N.W.2d 416, 421 (Iowa 1984). Others include motive (that can be inferred from the relationship between the defendant and victim) and evidence regarding the nature of the killing. *Id.* There is an overwhelming amount of these other forms of circumstantial evidence here. That evidence includes that Walker took the break-up with Sullivan hard, pictured himself killing anyone she began dating, wanted her to feel pain, wanted to disfigure her face, pictured himself stabbing her, and expressed interest in using knives to inflict the injuries he discussed. After Walker agreed to the meet up, Walker armed himself with several knives and then brutally stabbed both Sullivan and Negron an excessive number of times, including multiple stab wounds to Sullivan's face, causing their deaths.

Under these circumstances, it makes no difference who set up the meeting. Even if Walker's counsel had put on more evidence that he was not the one that

set up the meeting, there is no reasonable probability of a different outcome at trial. As such, we reject Walker's claim for PCR based on ineffective assistance of counsel in failing to present more evidence that Walker was not the one who set up the meeting.

## VI.    Conclusion

The district court had no obligation to hold a hearing on the State's motion for summary disposition.   The court correctly concluded that Walker failed to generate a genuine issue of material fact on his claims of ineffective assistance of counsel.   As a result, the court correctly granted the State's motion dismissing Walker's application for PCR, which negated any right Walker had to an evidentiary hearing on his application.

**AFFIRMED.**