# IN THE COURT OF APPEALS OF IOWA

No. 23-1361
Filed December 18, 2024

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**MICHAEL ALAN CRUZEN,**
　　Defendant-Appellant.
_____

　　Appeal from the Iowa District Court for Scott County, Mark R. Lawson, Judge.

　　A defendant appeals his conviction for tampering with a witness. **AFFIRMED.**

　　Ryan J. Mitchell of Orsborn, Mitchell & Goedken, P.C., Ottumwa, for appellant.

　　Brenna Bird, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.

　　Considered by Tabor, C.J., and Chicchelly and Sandy, JJ.

**TABOR, Chief Judge.**

"It has been said that nothing good happens after midnight."[1]  That adage rang true for M.A. when she answered a phone call from a restricted number "a little after midnight."  She recognized the caller as Michael Cruzen, who had a no-contact order barring him from communicating with her.  M.A. had also been subpoenaed as a State's witness in a simple misdemeanor case pending against Cruzen.[2]  In the call, which M.A. recorded, Cruzen said: "I tell you what, if you don't drop these charges against me, I'm going to have a little street justice on you."

That call motivated the State to charge Cruzen with witness tampering.  A jury convicted Cruzen on that aggravated misdemeanor charge.[3]  He appeals, alleging the State failed to prove his reference to "street justice" was a threat.  He also complains that the court refused to define "threat" for the jury.  Because substantial evidence supported the jury's verdict and defining "threat" was unnecessary, we affirm his conviction.

## I.      Facts and Prior Proceedings

M.A. had known Cruzen for about forty years.  So she had no doubt whose voice she heard on the phone call in the early morning hours of March 25, 2022.  After Cruzen mentioned "street justice," M.A. responded: "Oh my God, what the hell."  Cruzen then told her that he was "not playing with this dumbass shit no more."  He continued:

---

[1] *State v. Sanchez*, 206 A.3d 115, 116 (R.I. 2019).
[2] The State planned to try Cruzen on a charge of third-degree harassment for making hostile posts on M.A.'s Facebook page.
[3] The State also charged Cruzen with harassment in the second degree.  But the jury found him not guilty of that serious misdemeanor.

You cost me about fifty grand already. So you want to keep playing this dumbass game? I got something for you. I'm in Texas, and I'm going to stay down here. While you're up there shit's going to happen. You either drop the charges or play ball. You think this is a game? It's not.

M.A. tried to reason with him: "You can't say things like that. That's wrong." But he persisted, insisting that she cost him "tens of thousands of dollars." When she denied his accusations, he said: "Continue your fucking dumb shit. Continue it. Continue to press charges against me and call the police. Continue to do that and see what happens." After a bit more back and forth, M.A. told Cruzen: "I think we're done here. I think you've threatened me enough." He closed their conversation by saying: "No, I'm not threatening you. I'm promising you."

Later that morning, M.A. reported the call to the police. In response, officers sought a warrant to arrest Cruzen for violating the no-contact order. On top of that violation, the State charged him with harassment and witness tampering.

M.A. testified that the call made her feel "[t]hreatened, very threatened, intimidated." She said, "[J]ust talking about it [was] a little nerve-wracking." She took Cruzen's reference to "street justice" as a threat of "somebody beating me up." On cross-examination, she discussed Cruzen's accusations that she had stolen his property, including boots, vehicle titles, and a motorcycle key. Defense counsel also asked how she interpreted the term "street justice" used by Cruzen: "did you believe that [he] would send people over to your house for these titles?" She said, "yes," and she was concerned for her safety because "he has a lot of people who work for him."

At the close of the State's case, the defense moved for judgment of acquittal, arguing the State offered insufficient evidence that Cruzen harassed

M.A. to influence her cooperation in the pending simple misdemeanor case. The court denied the motion, reasoning that

> the totality of [Cruzen's] statements, if believed by a jury, would support a finding that [Cruzen] threatened [M.A.]. Those statements also support the element that [Cruzen], apparently, knew [M.A.] was going to be a witness against him. And a rational juror could conclude that that was done to either prevent her from testifying in the case or influencing or attempting to influence her testimony in the case.

The court added that Cruzen "allegedly made the statement that she needed to drop the charges or play ball." It concluded "a rational fact finder could find that that is a reference to the upcoming criminal case to which [M.A.] had been subpoenaed to testify in two weeks."

Cruzen took the stand in his own defense. He admitted making the call but insisted his intent was to urge M.A. to return property that she took from his house. After the defense rested, Cruzen proposed a jury instruction defining "threat"—a term used in the marshaling instructions for both witness tampering and harassment. The court declined to give the proposed instruction, finding that "threat" was not "a legal term that requires further definition."

Following deliberations, the jury found Cruzen guilty of tampering with a witness, in violation of Iowa Code section 720.4 (2023). The jury acquitted Cruzen on the harassment count. The court sentenced him to an indeterminate two-year prison term with credit for time served. He now appeals.

## II. Analysis

### A. Substantial Evidence

Cruzen first contends that the district court should have granted his motion for judgment of acquittal because the State offered insufficient evidence that his

phone call to M.A. met the elements of tampering with a witness. We review Cruzen's contention for the correction of legal error. *See State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). In undertaking that review, we give great deference to the jury's verdict. *Id.* And we view the evidence in the light most favorable to the verdict, including any legitimate inferences that may fairly and reasonably be deduced from the record. *State v. Buman*, 955 N.W.2d 215, 219 (Iowa 2021). In brief, substantial evidence must persuade a rational jury—beyond a reasonable doubt—that the accused is guilty. *Id.*

We start with the marshaling instruction that required the State to prove these elements:

> 1. On or about the 25th day of March, 2022, [Cruzen] threatened [M.A.].
> 2. [Cruzen] knew [M.A.] had been or would be summoned as a witness in a judicial proceeding.
> 3. [Cruzen] specifically intended to either:
> a. improperly influence [M.A.] with respect to her testimony in the case; or
> b. prevent [M.A.] from testifying in the case.

In contesting the verdict, Cruzen claims that M.A. was confused in her testimony about what charges Cruzen requested that she drop. He asserts: "Such unsure statements cannot support a jury finding Cruzen guilty beyond a reasonable doubt of tampering with a witness." Cruzen also argues that the State did not prove that he threatened M.A. with bodily harm. He maintains: "The statement regarding street justice was not a threat." Rather, he claims that he was calling to discuss getting back items that M.A. had allegedly taken from him—the same spin that he offered when testifying at trial. The jury was free "to believe or disbelieve" his testimony. *State v. Schrier*, 300 N.W.2d 305, 309 (Iowa 1981).

Contrary to Cruzen's position, the record includes sufficient evidence from which a rational trier of fact could find that he threatened M.A. *See State v. Bartilson*, 382 N.W.2d 479, 481 (Iowa Ct. App. 1985) (finding evidence of a threat sufficient based on the substance of the defendant's telephone conversation even if the precise words did not state an intent to inflict injury). First, the context was menacing: he called her from a restricted number in the early morning hours. Second, the content was hostile: he swore at her and promised "street justice" if she did not "drop" charges against him. A rational juror could easily understand that phrase as a threat of physical violence. *See Hart v. State*, No. 1999-477, 2000 WL 18755, at *1 (Iowa Ct. App. Jan. 12, 2000) (defendant admitted beating victim with a baseball bat, claiming victim had stolen money from him, and describing his actions as "street justice"). What's more, that ominous warning was not isolated. He also told her if she kept "playing this dumbass game" that "shit was going to happen." We reject Cruzen's invitation to disturb the jury's verdict.

## B. Jury Instruction

Cruzen next claims that the district court erred in refusing to define "threat" for the jury. At trial, he proposed this definition: "a 'threat' encompasses only those statements where the speaker means to communicate a serious expression of an intent to inflict evil, injury, or damage on another." The court reasoned that "threat" was a common term within the understanding of jurors. It also worried that the proposed instruction defined the term only from "the defendant's point of view."[4]

---

[4] The court explained that whether a statement constitutes a threat is an objective test. *See State v. Lacey*, 968 N.W.2d 792, 804 (Iowa 2021) ("[I]n considering whether a reasonable person of ordinary intelligence would interpret another's

We review the refusal to give a requested jury instruction for correction of legal error. *State v. Montgomery*, 966 N.W.2d 641, 649 (Iowa 2021). But if the proposed jury instruction is not required, our review is for an abuse of discretion. *See State v. Bynum*, 937 N.W.2d 319, 324 (Iowa 2020).

True, Iowa courts sometimes define "threat" for juries. *See, e.g.*, *State v. Leavengood*, No. 15-0603, 2016 WL 4543620, at *2 (Iowa Ct. App. Aug. 31, 2016) (noting the trial court's instruction that a threat was "an expression of an intention to inflict evil, injury or damage on another"). But a definition was not required here. *See State v. Hopkins,* No. 17-1372, 2018 WL 3873413, at *1–2 (Iowa Ct. App. Aug. 15, 2018) (affirming district court's finding that "threat" in the extortion statute was "readily understandable without a definition"). The district court properly rejected Cruzen's proposed instruction.

**AFFIRMED.**

---

statement as a threat, the statement is viewed in light of the surrounding circumstances.").